# SQUIRES *v.* PAYNE *et al.*

Where the plaintiff took a mortgage on one thousand sacks of flour, and took the warehouseman's receipt therefor, and subsequently requested the warehouseman to segregate the particular flour from a large quantity belonging to the mortgagor, and the warehouseman accordingly put plaintiff's mark on a pile of eleven hundred and ninety-six sacks of the mortgagor, standing separate from the rest; *Held* that it was a good segregation.

This delivery destroyed the privity between the warehouseman and the mortgagor, and made the former agent of the mortgagee alone, with whom he might adjust for the excess.

Where the sheriff wrongfully took possession of the goods, and thereby deprived the plaintiff of them, the fact that they were taken by the coroner, under a writ against the sheriff, before the latter had removed them, does not excuse his tort.

APPEAL from the Superior Court of the City of San Francisco.

This was an action of trespass against Payne and Herrick, for seizing

Squires v. Payne.

eleven hundred and ninety-six quarter sacks of flour, for the value of the flour and for damages. The plaintiff loaned $1,500 to one Chazal, and took the note of the latter for the amount and interest, secured by a chattel mortgage on the flour; for which he received, in his own name, the receipt of Tilden & Little, the warehousemen, with whom it was stored, and who acted as Chazal's agents in negotiating the loan. The defendants received a similar receipt for three thousand six hundred sacks, as security for a loan made by them to Chazal. The plaintiff demanded of Tilden & Little that his one thousand sacks be segregated from the balance of Chazal's flour. T. & L. informed him that it would be very inconvenient to make an entire change in the position of the flour, but placed the plaintiff's name on a separate lot of Chazal's flour, consisting of eleven hundred and ninety-six sacks. H. W. Beebe succeeded Tilden & Little in the warehouse, and advertised for parties to exchange their warehouse receipts. On discovering that there was a deficiency in the "Eclipse Mills" flour, which was the brand of the flour of Chazal, he refused to exchange receipts for that brand, whereupon suits were commenced by several parties. The defendants brought a replevin suit against Beebe for three thousand six hundred quarter sacks of flour, in which the sheriff, by the direction of the attorney of defendants, seized the eleven hundred and ninety-six sacks above referred to, and other flour in the warehouse, and placed a keeper in charge. Shortly after, and on the same day, the coroner claimed the flour, under a writ, in an action brought by Schwabe & Co., against the warehouseman and the sheriff. The sheriff removed about four hundred of the eleven hundred and ninety-six sacks before he was stopped. The coroner seized the remainder; thereby making, with other flour, sufficient to satisfy his writ—leaving the sheriff about eleven hundred and forty-six sacks in all. The value of the flour was proved to be one dollar and fifty cents per quarter-sack.

The Court below charged the jury that a separation and marking of a parcel, of nearly the same quantity, would amount to a segregation; and that, if the sheriff first seized the flour of the plaintiff, the coroner's taking it out of his hands would not change the liability of the defendants. The Court refused to instruct the jury that, in any event, the plaintiff could only recover one thousand sacks. The jury found a verdict for the plaintiff for $1,500. Motion for a new trial made and overruled, and judgment entered on the verdict. Defendants appealed.

*Hall McAllister* for Appellants.

Plaintiff does not show sufficient title to recover.

His possession was only constructive. Mere possession is enough to support trespass where it is actual. Constructive possession is not sufficient, unless coupled with a property in the goods, either general or special. 1 Chitty Pl., 168; 9 Metcalf, 235.

Plaintiff sets up a special property; his position being that of a pledgee, with the right of immediate possession.

Where goods are sold, it is implied that they are certain specified goods. So when they are pledged. Therefore, where goods are sold or pledged, the property cannot pass until the particular goods are identified, which can be done, when they form part of a mass, only by segregating them from all others.

The one thousand sacks of plaintiff were never identified by being separated from all others. If a segregation of twelve hundred were sufficient to do this, so would have been a segregation of fifteen hundred, or two thousand, or five thousand.

There was not one of those sacks that could be said with certainty to be pledged to the plaintiff. If any two hundred of these twelve hundred had been damaged or destroyed by some accident, plaintiff could not have been made to bear the loss, for it could not be proved they were his. Where goods are mixed, until they are identified their owners are not identified.

In a legal action, where plaintiff's title is incomplete, he cannot maintain the suit.

Holder of a negotiable note, though *bona fide* purchaser, can maintain no action without the payee's endorsement.

Here, the goods not having been identified at the time of the alleged trespass, no property had passed to the plaintiff, and he can maintain no action for them.

As to segregation: Gardner *v.* Suydam, 3 Selden, 357, and cases there cited.

Other cases as to segregation are, 4 Taunton, 644; 7 Cowen, 85; 7 Ohio, 128; 12 East., 614; 6 East., 614; 11 East., 210; 5 Taunton, 176, 617; 2 Campbell, 240; 2 Mawle & Selwyn, 240; 5 Barnwell & Cresswell, 857; 8 Dowling & Ryland, 693; 1 Taunton, 458; 3 Barnwell & Alderson, 321; 4 Campbell, 237; 13 Pickering, 182; 2 Johnson, 13.

As against defendants, Chazal's transfer of the goods to plaintiff was void, under §§ 15, 16, 17 of Statute of Frauds, for want of an actual change of possession. They remained in the hands of Chazal's agents as before, giving him that false credit which enables a debtor to defraud creditors, and which it is the very object of this provision in the Statute of Frauds to prevent.

The evidence shows plaintiff's right, if any, was only to one thousand sacks.

The verdict being for $1,500, is evidently for the whole twelve hundred sacks.

But the evidence shows a levy upon only eleven hundred and forty-six sacks in all, and that only about four hundred of these belonged to the twelve-hundred-sack pile, the one claimed by plaintiff.

So that the verdict is against the evidence.

To show possession in the sheriff, the jury were allowed to consider Schwabe's suit, and the service of process by the coroner; this being *res inter alios acta*, was inadmissible.

If plaintiff answers the objection as to want of segregation of the

one thousand sacks, by claiming that there was a complete transfer of the whole twelve-hundred-sack pile to him by Tilden & Little, as Chazal's agents, setting it apart for him, this amounted to a subsequent parol mortgage or pledge of two hundred additional sacks.

1. This subsequent mortgage was void under the Statute of Frauds, § 20.

The evidence shows that receipts had been given by Tilden & Little covering all the Eclipse Mills Flour of Chazal in the store. Every portion of it was thus specifically appropriated to the payment of Chazal's creditors in the precise quantities named in their respective receipts. Such a proceeding was therefore a "charge upon goods made to defraud creditors," and void.

2. But supposing this subsequent pledge not to be void under the statute and assuming Tilden & Little to have had full power as Chazal's general agents, to mortgage his flour, the moment they had given receipts for all the flour, their agency for that purpose was exhausted; they were *functi officio* and could make no further or different appropriation of it.

Again : suppose their agency to be still continuing after the specific appropriation of every portion of the flour, they could not take from one what belonged to another, without committing a tort, which there is no evidence of Chazal's having authorized them to do.

If it be objected that from the amount of the verdict, $1,500, the jury evidently found in favor of the validity of the subsequent transfer because twelve hundred sacks, at $1 25, would make exactly this amount, the answer is, that *non constat* but the verdict was made up of $1,250, for the one thousand sacks, and $250 as damages.

Now it is entirely uncertain which of these two suppositions is the true one, and in such case the appellate Court always directs a new trial. 3 Wendell, 418 ; 31 Maine, 528 ; 1 Pick., 206 ; 5 Ohio, 309 ; 10 B. Monr., 4 ; 2 Bibb, 89 ; 7 B. Monr., 193.

*Shafter*, for Respondent.

As to the refusal to instruct the jury that the plaintiff cannot, in any event, recover more than one thousand quarter-sacks :

1. The twelve hundred sacks were, by all the testimony, the property of Chazal.

True, the defendants claimed flour under Chazal, but no part of this pile had been set apart to them by their vendor, or by his agents, Tilden & Little. Therefore the defendants had no property or possessory rights, at the time of the seizure, in a single bag of it. Now, as the whole pile had been put into the plaintiff's possession, by Tilden & Little, that possession was, of itself, a sufficient title as against the defendants, who were wrong doers. And the jury were so instructed by the Court. 13 Pick., 183 ; 6 Hill, 208.

If the defendants had performed acts amounting to a conversion of the thousand bags, they stood charged, by reason thereof, with the full value of all the sacks so converted ; and no deduction could be claimed

therefrom, except upon the ground of a return or a recapture, and there was no evidence in the case to prove either. If, after they had converted it, as against the plaintiff, other parties took it tortiously from them, that fact would not, to any extent, impair the plaintiff's rights.

All that the defendants were entitled to on the point of seizure, was a correct charge, and the charge on that point was free from error.

Custody and control are enough. Attaching the flour and putting a keeper in charge of it, would amount to such custody and control, without an actual removal or counting.

The evidence on the point of seizure went beyond the facts contemplated in the charge—for about four hundred bags were actually removed and carried away by the sheriff—and this fact not only amounted to a clear conversion of the four hundred bags, but illustrated more fully the intent and purpose of the sheriff in putting a keeper over the entire pile.

It is not necessary to show a manual taking of the thing in question, nor that the defendant has applied it to his own use; but the assuming a right to dispose of it, or exercise of dominion over it, to the exclusion of, or in defiance of, the plaintiff's right, is a conversion. Bristow *v.* Burt, 7 Johns., 254; Murray *v.* Barliney, 10 ib., 172; Reynolds *v.* Shuler, 5 Cow., 323 ; Back *v.* Baxter, 3 Mis., 207.

To constitute an attachment it is necessary that the officer should have the actual custody of the goods; but it is sufficient if he is in view of the goods, having the power of taking actual possession. 12 Mass., 495, Train *v.* Wellington.

Can there be any doubt but that the sheriff had such a possession of the flour as would have enabled him to hold it as against a subsequent attachment.

And such possession as would have enabled him to maintain trespass or trover, against any one who might have taken it from him without a superior right ?

Though our receipt and mortgage call for one thousand sacks only, still Chazal, by his authorized agents, put the pile of twelve hundred sacks into our hands. We then had the lawful possession of the entire pile as against Chazal.

The defendants stand in the position of strangers invading this possession. They had receipts, to be sure, but that was all. Not a bag of our pile had ever been designated as a subject matter upon which their receipts were to operate.

If the bulk passes into the hands of the vendee, with the vendor's consent, subject to a right in the vendor to reclaim the excess, the contract of sale is completed by the delivery of the bulk; so that if the bulk should be destroyed by fire, or any other casualty, the loss would fall on the vendee as to the part sold. Story on Cont., § 799.

Again, segregation is not an inflexible rule of property, but is necessary only in those cases where the intention of the parties cannot be effectuated without it.

It is not an end but a means, simply, to accomplish an end, which the parties contemplated. 13 Pick., 183 ; 20 ib., 280.

Such a delivery (absolute in part, and provisional as to the residue,) would be a good delivery under the Statute of Frauds, as between the parties.

It would be good as against a subsequent purchaser. 2 Comst., 258, Crofoot *v.* Bennett. And as against an attaching creditor if there were no fraud in fact.

The opinion of the Court was delivered by Mr. Justice HEYDENFELDT. Mr. Chief Justice MURRAY and Mr. Justice TERRY concurred.

When the plaintiff demanded a segregation of the 1000 sacks which belonged to him, the act of the warehousemen in setting aside for him, and marking in his name, a separate bulk of 1196 sacks, amounted to a complete delivery of the whole. They might have afterwards adjusted with the plaintiff for the excess, but the delivery destroyed the privity as to the goods delivered between Tilden & Little and Chazal, and made them afterwards the agents alone of the plaintiff.

The law was correctly given by the Court below in regard to the seizure by the sheriff. He took possession of the goods, and thereby deprived the plaintiff of them. That they were afterwards taken from him, cannot excuse his tort. These two questions settle all that is material to the merits of the case.

The other errors relied on, are either not well assigned, or of no weight to affect the rights of the parties.

Judgment affirmed.