## J. H. MALLETT, Respondent, v. THE UNCLE SAM GOLD AND SILVER MINING CO., Appellant.

A person appointed Justice of the Peace by the Selectmen of the County of Carson, who had no power to make such appointment, and commissioned by the Governor of the Territory of Utah, who was authorized to issue commissions to persons elected to such offices, and having discharged the duties of such office and been generally recognized as a Justice of the Peace, is a *de facto* officer, and his acts are valid as to third persons.

An officer *de facto* is distinguished on the one hand from a mere usurper of an office, and on the other from an officer *de jure*.

When any rights are claimed by virtue of a judgment of a Court of special and limited jurisdiction, all the facts necessary to confer jurisdiction must be affirmatively shown.

Where a judgment of a Justice of the Peace, whose jurisdiction was limited to a certain county, is offered in evidence to establish rights acquired under it, and where it appears that such judgment was taken by default, it is necessary to show affirmatively that the summons was served on the defendant within the Territorial jurisdiction of the Justice before it can be introduced in evidence.

It is competent for a defendant in ejectment to show as a defense that prior to the bringing of the action the plaintiff had conveyed away his title to the premises, or that his grantor had done so prior to the conveyance by which plaintiff claims.

A mere naked trespasser cannot show outstanding title in a third party, except as a means of showing the want of all title or right of possession in the plaintiff.

The mining laws of the locality govern the location and manner of developing the mines, and when they directly point out how such mining claims must be located, and how the possession once acquired is to be maintained, that course must be strictly pursued.

When the Courts presume title in the first appropriator, it can only be a title subject to the conditions imposed by the mining laws and customs, under and by virtue of which it was acquired.

Where no mining laws exist, the miner locating a claim would hold only by actual occupancy, and by such work for the development of the mine as would, under

all the circumstances, be deemed reasonable, and his right of possession would only be continued by occupancy and use.

There can be no strict abandonment of property without the intention to do so.

The bare lapse of time, short of the statute of limitations and unaccompanied by other circumstances, would be no evidence of abandonment.

The possession of one partner or tenant in common inures to the benefit of all, until such possession becomes adverse.

If one partner or tenant in common, after having become associated with his co-partners in the development of a claim, voluntarily leave it in the possession of his co-tenants, and refuses to bear his just proportion of the expenses incurred by them in the development of it, and should afterwards bring his action to recover his interest, upon a proper showing to the equity side of the Court, relief would be refused until he had paid his full proportion of the expense incurred in such development.

APPEAL from the First Judicial District of the State of Nevada, Storey County, Hon. RICHARD RISING presiding.

The facts appear in the opinion of the Court.

*Thos. Sunderland, Quint & Hardy and J. H. Harmon,* Attorneys for Appellant, made the following points:

The acts of *de facto* officers are valid as to third persons. (Cowen's Treatise, 590, sec. 1,386; *Culbertson* v. *City of Galena,* 2 Gil. 131; *People* v. *Collins,* 7 John. R. 549, 14 Cal. 188.)

The complaint, summons and return had been properly admitted.

*First*—Because Smith was an acting Justice of the Peace, and Reese, Constable, and the return showed service on Anisini & Phillips, plaintiff's grantors.

The objections are:

*First*—The suit was brought in the name of the assignee.

*Second*—The return does not show where service was made.

*Third*—The return was not sworn to.

The first objection is answered by the fact that the Justice did take jurisdiction.

*Second*—The second objection is answered by the return, showing that a part of the defendants could not be found in the county; and the presumption is that all officers perform their duty until the contrary is shown. (Cowen's Treatise, 590, sec. 1,387).

*Third*—The laws of Utah did not require the return of a public officer to be made under oath.  (Sec. 4, p. 133, Laws of 1855).

The objections to the docket of the Justice are :

*First*—That the judgment was not pleaded.

*Second*—No foundation for the introduction of the judgment.

*Third*—William Smith not proven to be a Justice, and Reese a Constable.

*Fourth*—Action was brought in the name of an assignee.

*Fifth*—The return is not sworn to, and does not show service made in precinct or county.

*Sixth*—The judgment rendered against parties not served, therefore void.

The complaint avers title in plaintiff, and the answer traverses this averment, and sets up title in defendants.  No decision anywhere can be found justifying such an answer as plaintiff insists upon.

The foundation was laid as heretofore shown.

Objections third, fourth and fifth have already been answered.

The objection to the judgment on the ground that it was against parties not served, cannot be raised by plaintiff, because his grantors were served.

The common law was not in force in Utah; that Territory was ceded by the Republic of Mexico.  (Utah Laws of 1855, pp. 44–5.)

The civil law prevailed in Mexico and remained in force until changed by positive legislation.  (1 Storey on Constitution, sec. 150.)

The civil law authorized the taking of judgment against the joint property of all defendants jointly liable when a part only were served.

The common law was never introduced in Utah by Congress or the Territorial Legislature.  (Laws 1855, p. 115.)  The whole legislation of that Territory is against that presumption.  (Laws of 1855, p. 121, secs. 7, 8, 9; p. 129, sec. 3; p. 131, sec. 13; p. 260, sec. 1.)

It is error in a joint action to render judgment against two without finally disposing of the suit as to the others.  (1 B. Monroe, 119.)

But suppose it to be erroneous, it is good until reversed. (*Stearns* v. *Aquirre,* 7 Cal. 449.)

The judgment, if void, was good to show that defendants entered in good faith. (*Logan* v. *Steele's Heirs,* 7 Munroe, 108; *Gregory* v. *Haynes,* 13 Cal. 595.)

The Uncle Sam Company was a mining partnership, and its books should therefore have been admitted in evidence. (Collier on Mines, note to top p. 65, pp. 88 to 94; *Skillman* v. *Lochman,* 23 Cal. 199, and authorities there cited.)

If a partnership, the entrees were conclusive. (Storey on Partnership, sec. 191.)

The evidence was good as an admission by plaintiff's grantors, while in possession.

The Court erred in ruling out the deeds of Phillippi to divers persons, bearing date prior to February, 1861, not only because the deeds were properly in evidence, but because after their admission, and the case had been put to the jury on the supposition that they were in evidence, the Court in the charge to the jury for the first time ruled against their admissibility. (*Dyson* v. *Bradshaw,* 23 Cal. 528; *Shauber* v. *Jackson,* opinion of Oliver, 2 Wend. 47–48; *Moore* v. *Till,* 22 Cal. 513; *Willis* v. *Wozencraft,* 22 Cal. 607; *Bird* v. *Lisbros,* 9 Cal. 6.)

The Court below did not properly charge the jury upon the law of abandonment as applied to the rights of claimants of mining property.

Abandonment, in the common law sense, has no application to the circumstances under which a claimant may lose his right to work a mine.

A party claiming a mine is required to work upon it. This is the evidence of his claim, which extends by fiction of law his possession beyond his actual occupation. A failure to work leaves the mine *publico juries,* and vacant to the next comer.

It has been held in England that mining rights require; and of property, perhaps, "must require" the parties interested in it "to be vigilant and active in asserting their rights." (*Pendergast* v. *Turton,* 20 Eng. Eq. Rep. 109.)

There was no abandonment in that case, because plaintiff was all the while asserting title, offering to sell his interest and

negotiating with the company. There was no forfeiture, yet the Vice Chancellor held that the plaintiff's right was lost.

If it be conceded that the Court would not from the mere lapse of time, short of the statute of limitation, instruct the jury that the plaintiff's right was lost, the Court below was still in error in withdrawing the question from the jury by telling them that lapse of time, short of the statute of limitation, might not prove a loss of right. The delay proved was evidence tending to show abandonment.

Under the appropriate head we will endeavor to show the Court that the claimants of a mine, with respect to the working of, sharing the losses and dividing the profits, are not tenants in common, but subject to the rules of co-partnership. In this place it is enough to say that the tendency in common ceases whenever one holds adversely to the others. (*Humbert* v. *Trinity Church*, 24 Wend. 577; *Collum* v. *Clement*, 23 Cal. 247.)

The ruling out of the evidence of conveyance by the plaintiff's grantor, prior to the sale to plaintiff, was probably erroneous. (*Bird* v. *Lisbros*, 9 Cal. 1; *Dyson* v. *Bradshaw*, 23 Cal.)

The relation of parties interested in a mine is in no sense that of tenants in common *inter sesse*. (*Able* v. *Love et al.*, 17 Cal. 237; *Rice* v. *Colombat*, 12 Cal. 414.)

The *onus* of proof is not on defendants to show that plaintiff or his grantors abandoned, but on plaintiffs to show that the *animus revertendi* constantly existed, and also that they have not lost their right, by neglect, to sue. (*Whitney* v. *Wright*, 15 Wend. 171–9; *St. John* v. *Kidd*, Cal. Rep., October Term, 1864; *Martin* v. *Salambro Copper Mining Company*, Id.; *Rogers* v. *Brunton*, 59 Eng. C. L. 25; *Alley* v. *Deschamps*, 13 Vesey, 226–7; *Hillary* v. *Walter*, 12 Id. 264; *Richardson* v. *McNulty*, 24 Cal.)

*J. S. Pitzer and C. J. Lansing*, Attorneys for Respondents.

In the absence of any proof as to the authority of J. M. Reese to act as Constable, it was competent to ask him whether he was elected by the people.

It was not shown on the trial that William Smith was at the time of the entry of the pretended judgment a Justice of the Peace. (Utah Laws, p. 111, sec. 1; p. 129, secs. 1 and 2; p. 126, 129, 136.)

The complaint shows that the action was commenced in the name of the assignee of an account. (15 Cal. 311, Id. 252.)

The complaint, summons nor return thereon showed that the defendants, nor any of them, were residents of the Ninth Precinct, Carson County; or that any of them were residents of Carson County or Utah Territory; or that the case is covered by any exception of the Utah statutes. (Utah Laws, sec. 13, p. 131.)

It was not shown that the said William Smith had jurisdiction over persons of defendants or of the action. (Utah Laws, 131, sec. 13; *Lowe* v. *Alexander*, 15 Cal. R. 301; *Swain* v. *Chase*, 12 Cal. 283; 1 Phillip's Evidence, Cowen & Hill's Notes, vol. 4, p. 206; *Smith* v. *Andrews*, 6 Cal. R. 654; *Whitewell* v. *Barbier*, 7 Cal. 64.)

The return of the persons serving the summons in the action was not sworn to according to law. (Utah Laws, 133.)

The judgment is rendered against the parties served, as well as against those not served. (*Hall* v. *Williams*, 6 Pick. 246.)

The defendants plead no judgment. (*Piercy* v. *Sabin*, 11 Cal. 22, and cases there cited.)

There was no error in refusing to admit the Constable's deed, for that there had been no judgment proven or execution, and could not show color of title.

The instructions two, three, four and five, given by the Court below, are no ground of error.

*First*—Because defendants did not plead outstanding title. (24 Cal. 348; 1 vol. Van Sandford's Pleadings, 400–454; *Piercy* v. *Sabin*, 10 Cal. 22.)

*Second*—Defendants cannot show outstanding title, because they are trespassers. (*Bird* v. *Lisbros*, 9 Cal., as to ouster, etc.; *Rowe* v. *Bradley*, 12 Cal. 230; *Winans* v. *Christy*, ex. Cal. 79; Adams on Ejectment, 38, notes; *Jackson* v. *Hardeer*, 4 John. 211; *Beguette* v. *Canfield*, 4 Cal. 279; *Gregory* v. *Haynes*, 13 Cal. 395; *Jackson* v. *Seelye*, 16 John. 200; *Welsh*

13

v. *Sullivan*, 8, Cal. 187; *Sullivan* v. *Davis*, 4 Cal. 292; *Wells* v. *Stout*, 9 Cal. 497; Bouvier's Law Dic., vol. 1, 277.)

Instructions asked by plaintiff and given, are no error. (Bouvier's Law Dic. 14, vol. 1; *Waring* v. *Crow*, 11 Cal. 366; *Stephens* v. *Mansfield*, 11 Cal. 365; *Morton* v. *Solaus Company*, October Term, 1864; *Morris* v. *Russell*, 5 Cal. 250.)

Opinion by LEWIS, C. J., BROSNAN, J., concurring.

This action is brought to recover one hundred feet, undivided, in that certain mining ground located in the County of Storey, and now occupied and claimed by the defendants, the Uncle Sam and Baltic Gold and Silver Mining Companies. The plaintiff alleges in his complaint that on the 16th day of November, A. D. 1863, he was the owner as tenant in common, in the possession and entitled to the possession of one hundred feet, undivided, in the Uncle Sam and Baltic Gold and Silver Mining Companies ; that said claim at the time of its location was three thousand feet in extent; that after the location thereof by the grantors of plaintiff and others, it was divided between the two companies, defendants in this action— the Uncle Sam taking the north twelve hundred feet, and the Baltic taking the south eighteen hundred feet; that plaintiff, his grantors and co-owners in said claim, owned and were possessed thereof, by virtue of their location and appropriation of the same on the 12th day of March, A. D. 1860; that he by himself and his grantors remained in possession of said undivided one hundred feet of ground as tenants in common with his co-owners until the ouster complained of. It is further alleged that on the 16th day of November, A. D. 1863, the defendants, by their agents, servants and employees, wrongfully and unlawfully entered upon said claim and ousted plaintiff therefrom, and that they unlawfully and wrongfully withhold the same from him. The answer specifically denies each and every allegation of the complaint, but admits that defendants are in possession of the premises, alleging title and right of possession in themselves, and that neither the plaintiff nor his grantors have been seized or possessed of the premises within two years next preceding the commencement of this

action; and that they and those under whom they claim title have been in the quiet and peaceable possession thereof for more than two years before the bringing this suit; that long before the commencement of this action plaintiff and his grantors abandoned whatever right, title and interest he or they may have had in the claim aforesaid. The facts outside of the pleadings, as developed by the record, are substantially as follows:

In March, A. D. 1860, the mining claim now occupied by the defendants was located by Charles Phillippi, Petro Anisini, and thirteen others; that these persons, or some of them, occupied and worked the claims thus located up to the 9th day of March, A. D. 1861, at which time the entire claim was sold under execution issued out of a Justice's Court against the owners thereof, to one H. W. Johnson, to whom the Constable making the sale executed a deed of the premises so sold and placed him in the possession of the entire claim. A large number of the claimants thus ejected, availing themselves of an offer made by Johnson, redeemed their respective interests and were admitted to all their original rights in the claim with him. From Johnson and the persons who thus redeemed their interests the present defendants derive their title. Philippi and Anisini, the locators from whom the plaintiff claims his title, did not redeem their interests; whether they offered to do so or not is matter of no consequence in this action, if the view we take of their rights and liabilities be correct.

At the trial, the defendants, for the purpose of showing title and right of possession in themselves, offered in evidence the complaint, summons, return, judgment, execution, evidence of the sale, and the Constable's deed by which Johnson became possessed of the claim; the docket of the Justice by whom the judgment was rendered was also offered for the purpose of showing the proceedings had in the action against Phillippi and others, and in which the judgment was rendered. To all of which the plaintiff's counsel objected, urging various reasons in support of the objection, among which are: That the return of the officer does not show that the defendants in that action were served with process within the jurisdiction of the Justice, and that the Justice rendering the judgment and

Constable who served the process were neither officers *de facto* nor *de jure*, and that, therefore, the judgment is void, and defendants could therefore obtain no right under it. We do not deem it necessary to notice any of the other objections interposed.

The Court below ruled out all the proceedings had before the Justice, together with the Constable's deed to Johnson, upon the ground that the judgment was a nullity, and therefore the defendants acquired no rights under it.

The defendants then offered in evidence several deeds from Phillippi to McMahon, Swift and others, conveying all his interest in the Uncle Sam Company, and all bearing date prior to the time of the execution of this deed to Small, the grantor of plaintiff, for the purpose of showing that at the time of the making of his deed to Small, Phillippi had no interest whatever in the ground in controversy, and that Small and the plaintiff, Mallett, received nothing by such conveyance. The books of the old Uncle Sam Company were also offered for the same purpose, all of which were admitted by the Court below, but were afterwards stricken out and the jury instructed to disregard them, for the reason, as it appears by the instructions of the Court, that the defendants being mere naked trespassers were not in a position to show outstanding title to defeat plaintiff's claims.

These rulings of the Court—the giving of the instructions asked by plaintiff, and refusal to give instructions asked by defendants—are assigned as error by appellants; and as the record in this case presents numerous questions involved in other cases against the same defendants, it will perhaps be a matter of utility to pass upon all such as may be deemed of importance in the determination of the others.

The first question presented for our consideration is that raised upon the ruling of the Court in rejecting the docket of the Justice and the proceedings had before him. It appears from the testimony that Smith, the Justice, and Reese, the Constable, were not regularly elected to their respective positions, but were appointed by the Selectmen of the County of Carson, and received their commissions from the Governor. It is conceded that the appointment by the Selectmen was an

assumption of power not warranted by the statutes of Utah; but it is claimed that, having been commissioned by the power authorized to issue commissions to such officers, and they having acted in their respective capacities, were officers *de facto*, and that therefore their acts as to third persons are valid and their proceedings legal. Smith and Reese discharged the functions of Justice and Constable for the County of Carson, and seem to have been generally recognized as legally constituted officers. It may often be a matter of extreme difficulty to determine whether a person discharging the duties of an office is to be deemed a mere intruder, or an officer *de facto;* but a stronger case in favor of clothing such persons with official character and giving validity to their acts could scarcely be presented than the one at bar. Indeed, whenever a person so discharging the duties of an office is not a mere usurper of his position, the reason and spirit of all the authorities incline to support him as an officer *de facto*, and to sustain and give validity to his acts.

It is said that on the one hand he is distinguished from a mere usurper of an office, and on the other from an officer *de jure.* The rule is dictated by the most obvious necessity. If the acts of public officers could at any time be overthrown by the showing of some irregularity or informality in their elections or appointment, all confidence in the judgment of Courts would be destroyed, and judicial proceedings would ever be involved in doubt and uncertainty.

In the case of *The People* v. *White* (24 Wend. 539), this question is fully argued by the learned Chancellor, who says:

" An officer *de facto* is one who comes into a legal and constitutional office by *color* of a legal appointment, or election to that office, and as the duties of the office must be discharged by some one for the benefit of the public, the law does not require third persons, at their peril, to ascertain whether such officer has been properly elected or appointed before they submit themselves to this authority, or call upon him to perform official acts which it is necessary he should perform."

Sutherland, J., in the case of *Wilcox* v. *Smith* (5 Wend. 234), uses the following language:

"There must be some color of an election or appointment, *or an exercise of the office*, and an acquiescence on the part of the public for a length of time which would afford a strong presumption of at least a colorable election or appointment."

Viewing the position of the Justice and Constable in this case in the light of the authorities, they must be considered officers *de facto*, and their acts as to third persons be held valid.

But a more serious objection to the introduction of the judgment, and the subsequent proceedings thereon, arises from the failure to show that the Justice had jurisdiction of the persons against whom the judgment was rendered.

It nowhere appears that the summons in that case was served within the territorial jurisdiction of the Justice, nor that any of the defendants appeared, either personally or by counsel. This objection, independent of the others argued, was sufficient to authorize the Judge below in excluding all the proceedings had before the Justice. By the laws of Utah the jurisdiction of Justices of the Peace extended to the limits of their respective counties only. That service of a summons out of the county in which he had jurisdiction would be a nullity, there can scarcely be a doubt. A summons so served would have no more force or effect than if it were served out of the Territory itself. If it were shown affirmatively that the summons was not served within the limits of Carson County, and that the defendants did not appear, no doubt can be entertained that the proceedings based upon such a service would be *coram non judice* and void. No rule of law is more firmly established, or more generally recognized, than when any rights are claimed under or by virtue of the judgment of a Court of special and limited jurisdiction, all the facts necessary to confer jurisdiction must be affirmatively shown. (2 Cowen & Hill's Notes to Phillips' Evidence, 906 ; *Burns v. Harris*, opinion of Bronson, 4 Comstock, 374 ; *Bowman v. Russ*, 6 Cow. 233 ; *Smith* v. *Andrews*, 6 Cal. 654 ; *Swain* v. *Chase*, 12 Cal. 283 ; *Low* v. *Alexander*, 15 Cal. 296.)

Jurisdiction in Superior Courts is presumed until the contrary appear, but nothing is presumed in favor of the jurisdiction of inferior Courts.

The *rule omnia praesumuntur rite esse acta* has no application to the facts giving jurisdiction to such Courts.  In *Sollers* v. *Lawrence*, Willis, 416, the Court, in speaking of Courts of limited jurisdiction, says : " The rule is that nothing must be intended in favor of their jurisdiction, but that it must appear by what is set forth in the record that they had such jurisdiction.  The fact of the summons having been served upon the defendants would not necessarily bring them within the jurisdiction of the Court ; there must not only be a service, but there must be such service as will give the Court jurisdiction.  If a service out of the county would give no jurisdiction, the necessity of showing that it was *had within the county* is certainly as imperious as it is to show that service was had at all.  It is claimed, however, by counsel, that because the Constable states in his return that some of the defendants were not to be found within his county, that therefore the *presumption* is that those upon whom he obtained service were within the county, but the very acknowledgment that such a presumption is necessary, is itself a confession of the insufficiency of the return.  The rule is inflexible that no such presumption can be entertained.  Though the judgment and proceedings under it were properly rejected when offered for the purpose of showing title in defendants, yet whether it should have been admitted when offered merely to show that the defendants were not mere naked trespassers, is a question which it is scarcely necessary to pass upon in this case, as we think it perfectly competent for the defendants to have shown the outstanding title derived from Phillippi, independent of whether they were trespassers or not.

The Court below erred in ruling out the deeds from Phillippi to McMahon, Swift and others.  If these deeds established the fact that at the time of the conveyance to Small, Phillippi had no interest in the premises or claim in question to convey, Small got nothing and could convey nothing to the plaintiff.  If the defendants were not allowed to show such a state of things, we should have the novel case of a plaintiff, having no title and never having been in possession, recovering a mining claim from one in the actual occupancy, and in whom the law presumes title.  Surely this would not harmonize with the

rule of law so frequently declared and acted upon—that the plaintiff must recover on the strength of his own title. If such a rule were allowed to prevail here, the result would be that the plaintiff might recover the seventy-five feet claimed in this action, and McMahon, Swift and others might recover the two hundred and thirty-seven feet conveyed to them in another action. This action could not possibly be a bar to one brought by them, and thus the grantees of Phillippi would recover three hundred and twelve feet upon conveyances from a person who had but two hundred feet himself. This seems to be the legitimate result of the rule insisted on by the plaintiff's counsel. That a mere naked trespasser cannot show outstanding title as against one claiming by virtue of prior possession there is no question, but that such trespasser can show that the plaintiff, or those from whom he derives title, has parted with his right of possession by conveyance, or lost it by abandonment, is equally well settled on principle, if not on authority.

Where bare possession is relied on, it is but the announcement of a clear principle of justice, to say that a mere naked trespasser shall not be allowed to set up outstanding title to defeat the claim of one who, by prior appropriation or occupancy, shows a present right of possession. Ordinarily the proof of outstanding title is no defense to the plaintiff's claim, and where it is not, such proof should not be allowed. In fact, this rule, so frequently misapplied, is only applicable in those cases where even admitting the outstanding title, still as against the defendant, the plaintiff would be entitled to recover. If A, a mere naked trespasser ousts B, it can be no defense to such ouster that the real title is in C, because B, being in possession has a right which is good against A, and all the world but the real owner; and as the inquiry in such a case would be confined to the question which of the two, A or B, was entitled to the possession, it is evident that it would avail A nothing to show that the real title was in C, as that would not justify his possession against one who he had evicted, or who shows a prior possession to himself. Possession itself is a title, though of the lowest and most imperfect degree. (2 Blackstone's Com. 195.) Prior possession, then, is as potent to sus-

tain ejectment against all subsequent trespassers upon that possession, as the strict legal title itself would be, it would therefore be no defense in an action brought against a mere naked trespasser to recover possession upon such a title, that the strict legal title was in another. But the action of ejectment rests upon a present right of possession in the plaintiff. If, therefore, before action brought, the plaintiff conveyed away his title, or parted with his right of possession, or if he obtained no title from his grantors, to show that fact would not be so much, showing title in a third person, as that the plaintiff had voluntarily relinquished his right to the possession. That would be a direct answer and good defense to his claim of possession, whereas merely showing an outstanding title, not derived from plaintiff, would be no defense to his right acquired by prior possession. If the plaintiff acquired no title by the deed from Small to him he would seem to have no ground upon which to recover in this case. It appears that prior to the time when defendants took possession of the Uncle Sam claim the deeds offered in evidence had been executed, and if they conveyed anything, conveyed Phillippi's entire interest in the claim. Neither was he in the actual possession of the claim at the time defendants entered. True, those who had been his co-tenants were in possession, but in no view could their possession be considered his after they had conveyed away all his interest; they then held possession, not for Phillippi, but for his grantor. So the ouster complained of was not an ouster of the grantor of plaintiff or those from whom he claims title, but an ouster of the first grantees of Phillippi, who alone would have a right to complain. If those deeds conveyed his title what right had Phillippi when defendants entered upon the claim? He was neither in possession nor had he the right of possession. Surely, then, he could show none of the facts which would entitle him to a recovery in ejectment. To support this action the plaintiff must show a right of possession in himself at the time of bringing his action. Would not the showing of a conveyance by him or his grantors of all his interest in the claim at least go far to negative the presumption of such right of possession in him? If it can be shown that he is not entitled to possession because of his having abandoned

his interest, upon what rule of logic or principle of law can it be said that the same fact may not be established by showing that by deed he conveyed away such right?

Are the loose circumstances by which abandonment is usually proven, better evidence to show the relinquishment of a right than a deliberate conveyance by deed? This view of the case seems to be fully sustained by the cases of *Bird* v. *Lesbros*, 9 Cal. 1, and the case of *Dapou* v. *Bradshaw*, 23 Cal. 528.

All the remaining questions presented by the record in this case, will necessarily be passed upon in reviewing the following instructions, asked by the defendants and refused by the Court:

1. "The right to mine in the public land (and all land is presumed to be public), gives the occupant no title to the land. His only right is acquired by his appropriation in the manner prescribed by mining laws, and this right after being acquired, is continued only by use and occupation, and is lost by failure to use or occupy."

2. "The jury is authorized to find, that a party looses his right in mining ground by such failure, even without an intention to abandon."

No questions, perhaps, have ever engaged the attention of our Courts, which involved principles of greater or more general importance, than those presented for our consideration upon the instructions in this case. If we follow the reason and spirit of the decisions by the Supreme Courts of California, upon analogous questions, but few serious difficulties will present themselves in the solution of all the questions presented by the record in this cause; but if, on the other hand, they be disregarded, and we adopt the theories of the learned counsel for appellants, we are at once launched into chaos and endless uncertainties, with no precedent to guide and no legislation to direct the inquiries of the Courts. Blindly to follow precedent, regardless of the reasons upon which it is founded, or its applicability to the character and the social and political condition of the people whom it is to affect, would be no less unwise than to ignore and repudiate it entirely. The decisions of the higher Courts become part of the common law of our country, and they carry with them a weight of authority in proportion

to the ability of the Court rendering them, and the obvious reasons upon which they are based. We do not feel authorized, therefore, to disregard such adjudications and adopt theories, the innovation of which might bring upon us more evils than are now occasioned by the defects of the present system.

Certainty in the law, more, perhaps, than in any other feature, gives it efficacy and secures the object for which it is created. Fluctuating and conflicting adjudications would be no less prolific of evil than conflict and uncertainty in the legislative enactments of a State. So far, then, as the anomalous rights and character of the miner locating upon the public land, for the purpose of mining, are defined and establised by the Courts of California, we feel it our duty to recognize them whenever their decisions may be applicable to our condition. Nearly the entire mining interest of this State has grown up under the fostering protection of the law as it was administered and recognized by the Courts of that State. To repudiate the theory and principles upon which they have acted, would be to overturn the foundation upon which half our rights rest. The right to the possession of a mining claim, acquired by appropriation and occupancy, may be lost:

*First*—By forfeiture, where such rights are acquired and regulated by mining laws.

*Second*—Where no mining laws exist, and the right rests upon bare possession by failure to occupy, or to work the claim with reasonable diligence; and,

*Third*—By abandonment.

Usually the mining claims in this State have been located and worked with direct reference to the mining laws established in the district where the location is made. Such mining laws, when once established, are recognized by the Courts, and indeed the Legislature of our State has given them the force and binding obligation of legislative enactment. (Statutes of Nevada, p. 21, sec. 77.) When those mining laws, therefore, directly point out how mining claims must be located and how the possession once acquired is to be maintained and continued, that course must be strictly pursued, and a failure to do so might work a forfeiture of the ground. By the

mining laws of the Gold Hill District, all persons locating a claim were required to do three days' work upon it each month, or that work to the amount of fifty dollars would hold it for six months. If, in that district, neither of these requirements were complied with, there would be a forfeiture of right under those laws. When, therefore, the Courts presume title in the first appropriator, it can only be a title subject to the conditions imposed by the mining laws and customs under and by virtue of which it was acquired. We do not claim that the failure to comply with the conditions imposed by mining laws would work a strict forfeiture, but a kind of forfeiture recognized by the Courts of this coast from the earliest day, and which is certainly founded upon rational and just principles. But, in the absence of mining laws, and where the miner's right rests solely upon his possession, a different rule would obtain. The miner then locating a claim would hold only by actual occupancy, and by such work for the development of the mine as would, under all the circumstances, be deemed reasonable, and his right of possession would only be continued by occupancy and use. Such claim might be lost by the failure to work upon or develop it with reasonable diligence, and the same amount of work which would hold a claim under the mining laws, might not in all cases be sufficient to hold one where no such laws existed. The loss of right in that case would therefore present a very different question from a loss occasioned by failure to comply with the requirements of mining laws. Abandonment is a word which has acquired a technical meaning, and there can be no reason why a different signification should be given to it when applied to the loss of right to a mining claim than that which it has received in the books. It is defined to be "the relinquishment of a right, the giving up of something to which we are entitled."

In determining whether one has abandoned his property or rights, the intention is the first and paramount object of inquiry; for there can be no strict abandonment of property without the intention to do so. Thus differing from the loss of right by forfeiture under mining laws, or by the failure to use and occupy where no such laws govern, and in this, too, that abandonment may be complete the very instant the miner

leaves his claim, for time is not an essential element of abandonment; the moment the intention to abandon and the relinquishment of possession unite, the abandonment is complete. But lapse of time may often be a strong circumstance, when connected with others, to prove the intention to abandon, though the bare lapse of time, short of the statute of limitations and unconnected with any other circumstance, would be no evidence of abandonment—though the right might be lost, as before stated.

The cases upon which counsel rely to sustain the position that mere lapse of time, short of the statutes of limitation, will work an abandonment, are cases in equity, where the persons claiming its interposition had no strict legal rights, but relied upon the equity of their cause.

In such cases, upon a cardinal principle of equity jurisprudence, no relief will be granted if there has been an unreasonable delay in asserting the right or claiming the interposition of equity. This seems to have been the only point decided in the case of *Pendergast* v. *Tuston* (20 Eng. Ch. R. 97). There the Directors of the United Mills Mill Company seem to have had the power to declare the shares of any of the members of the company forfeited if the instalments on such shares were not paid within fourteen days after the day fixed for the payment thereof. Pendergast's shares were so forfeited, and his only remedy was in equity to set aside the proceedings of the Directors, and the Court held that his delay in asserting or claiming his rights had been unreasonable, and denied the prayer of his bill. But had Pendergast a right which he could have claimed in a Court of law, no time short of the statute of limitations would have deprived him of it. By the application of these general views to the facts in this case, it is evident that there could have been no forfeiture or loss of right on the part of Phillippi, if his co-tenants or partners remained in possession and held the ground as required by the mining laws, for the rule that the possession of one tenant in common or partner is the possession of all, is too well established to be ignored at this time. But it is claimed that Phillippi abandoned his interest in the Uncle Sam Company before his conveyance to Small. That he could abandon,

and that his co-tenants or partners could have taken his interest when so abandoned, there is no doubt. But some circumstances beyond the mere lapse of time would be necessary to establish that fact. The case of *Warren* v. *Crow* (11 Cal. 365) is directly in point here, and however much its authority may be weakened by the subsequent doubts of the learned Judge who delivered the opinion of the Court as to its accuracy, the decision is certainly based upon reason and the soundest principles of law. And though it is urged here with great earnestness that persons owning and associated together in working a mine are not tenants in common, but mining partners, the result in this case would seem to be the same in whichever character they may be clothed. The authorities generally seem to clothe such persons with the double character of mining partners and tenants in common. As to liabilities properly incurred in the development of a claim, they have been held to be answerable as partners; but with relation to the claim itself, they seem to be generally recognized as tenants in common, and there seems to be no sufficient reason for departing from those authorities in this case. We, conclude that the possession of one partner or tenant in common inures to the benefit of all until such possession becomes adverse, and that the absence of Phillippi, and refusal to pay assessments for a period short of the statutes of limitations, would give his partners or tenants in common no right or title adverse to him in his interest in the Uncle Sam claim; but such lapse of time, with other circumstances tending to show abandonment, might go to the jury to establish it. There seems to be no urgent neceessity for adopting a new rule at this late day, as there seems to be no obstacle in the rule itself to complete justice in any case. If one partner or tenant in common, after having become associated with his co-tenants in the development of the claim, *voluntarily* leaves it in the possession of his companions, and refuses to bear his proportion of the expenses incurred by them in the development of the same, and should afterwards bring his action to recover his interest, undoubtedly, upon a proper application, the equity side of the Court would defer his recovery until he had paid his full proportion of the expense incurred in the development and

improvement of the claim; and on the other hand, if he had been wrongfully ousted from his possession or rights, the persons so ousting him, or those claiming under them, can acquire no title in the claim adverse to him short of the statute of limitation, and of course could not ask the interposition of equity.

In this view of the case, the Court below properly gave instructions two, five, six and nine, asked by plaintiff, and erred in refusing to give instructions one, two and three, asked by defendants.

The judgment below must be reversed, and a new trial ordered.

Justice BEATTY, having been counsel in a similar case against the Uncle Sam Company, did not participate in the hearing of this cause.