## DYSON *v.* BRADSHAW *et al.*

In an action of ejectment, where the plaintiff in his complaint avers title of the demanded premises in himself, and the answer denies the averment, the defendant has a right to show, on the trial, that the plaintiff has divested himself of the title before the commencement of the action, by executing a deed to a third party, although the defendant does not connect himself with the title of such third party.

A deed takes effect only from the time of its delivery, and where a deed is placed in the hands of a third person, as an escrow, with an agreement between the grantor and grantee that it shall not be delivered to the grantee until he has complied with certain conditions, the grantee does not acquire any title to the land, nor is he entitled to a delivery of the deed, until he has strictly complied with the conditions.

The right of one who enters upon the public lands of the United States without the consent of the Government, to take possession of and hold more than one hundred and sixty acres, discussed.

APPEAL from the District Court, Fourth Judicial District, City and County of San Francisco.

The complaint in this case averred, " that heretofore and prior to the wrongful entry and ouster hereinafter set forth, to wit: on the twenty-eighth day of February, 1852, plaintiff was lawfully seized and in the possession of the following described property, to wit:—[here follows the description]—and being seized and possessed thereof, the above named defendants afterwards, to wit: on or about the first day of March, 1858, unlawfully and wrongfully entered into and upon said premises, and ousted the said plaintiff therefrom, and are still in the unlawful possession thereof, and wrongfully withhold the possession of the same from the plaintiff."

And plaintiff further says, " that said defendants, on or about the first day of March, 1858, unlawfully entered upon the premises aforesaid of the said plaintiff, and ejected, put out, and removed said plaintiff from the possession and occupation thereof, and kept him so removed for a long time, to wit: from the day and year last aforesaid until the present time," etc.

The pleadings were not under oath, and there were several defendants who answered separately, all denying, generally, the allegations of the complaint. The other facts are stated in the opinion of the Court.

*Cook & Hittell*, for Appellant.

The rule is stated, and the reasons for it adverted to, in *Bird* v. *Lisbros* (9 Cal. 1); *Piercy* v. *Sabin* (10 Cal. 22), and *Coryell* v. *Cain* (16 Cal. 567); and these cases have, ever since their adjudication, been regarded as a correct exposition of the law in California, and referred to in later decisions as high authority. They establish the doctrine, that a defendant who is a trespasser upon the prior possession of a plaintiff, cannot justify by showing the true title outstanding in a third person. The circumstances of these cases were different from the facts in the case at bar; but the reasoning applies, so far as it goes, with much force.

In *Bird* v. *Lisbros* (9 Cal. 1), the plaintiff claimed title under the prior possession, not of himself, but of his grantor. The defendant denied this alleged title, and attempted to prove that plaintiff had never in fact acquired the possessory title of his grantor, and, we admit, it was perfectly competent for him to do so. But the Court distinctly recognized the rule, that a trespasser upon the actual possession of a plaintiff cannot show title in a third person, and illustrated it with the following remarks : " We will suppose," said the Court, "A has the true title, but not the actual possession of real estate ; and B takes possession, and C then ousts B of his possession. In a suit by B to recover possession from C, the latter cannot set up in bar the outstanding title of A. The possession of C gives him a *prima facie* title, but the prior possession of B proves superior to this *prima facie* title of C. If it were otherwise, and a mere trespasser upon the prior actual possession of a party could justify his act by showing the true title outstanding in a third person, no party to the suit, then a prior possessor might never gain any repose by virtue of his adverse possession, and could never gain a title under the Statute of Limitations."

In *Piercy* v. *Sabin* (10 Cal. 22), the plaintiff relied on his own prior possession, and defendants attempted to set up the outstanding title of one Ludlum, who had located a preëmption claim over the premises. This the Court below refused to allow; and on appeal, the Supreme Court said : " There is no error in this. The defendants did not claim under Ludlum, and the plaintiff did claim by

virtue of his own possession, and also under Crowell, who had formerly been in the actual possession of the premises. Whether plaintiff's or Crowell's possession was older or better than that of Ludlum, was a question that defendants could not raise as between themselves and the plaintiff."

If we correctly understand these decisions, they establish the doctrine, that when a person intrudes, without claim of right, upon the actual possession of another, he will not be permitted to show title in any third person whatsoever, but must restore the possession which he has illegally gained. The offer to show that the deed from plaintiff to Woods was placed as an escrow in the hands of Sharp, to be delivered to Woods when certain conditions were performed, and that Woods never performed the conditions, was not an attempt to vary the terms of a written contract; for the proof of a delivery, in the very nature of things, must almost always rest in parol. And the rules of law upon this subject are so plain that we do not deem it necessary to collate authorities at any great length. We may refer to the very full and able note in Cowen & Hill's Notes to Phil. on Ev. (part 2, 826, note *n*), and particularly the case of *Barns* v. *Hatch* (3 N. H. 304) there cited, which shows that even the placing of a deed on record by a grantor, is not conclusive evidence of delivery. We may also invite the attention of the Court to *Elsey* v. *Metcalf* (1 Denio, 323), where it is held " that a presumption of delivery never obtains where a deed is proved to have been in the hands of the grantor at a period subsequent to its date," and that " the sending of a deed by the grantor to a stranger, or the deposit of it in a public office, is not a delivery to the grantee, unless it is so sent or deposited for his use."

In *Hatch* v. *Haskins* (5 Shepley, 397), Justice Shepley said: " The possession and production of a deed by the grantee, is *prima facie* evidence of its having been delivered; and for like reasons, in the absence of all contradictory testimony, the presumption arises, when found in the possession and produced by the grantor, that it has not been delivered." See also, *Cutts* v. *York Manuf'g Co.* (6 Id. 191).

In *Stiles* v. *Brown* (16 Vt. 565) Justice Hubbard said: " The case finds that the deed of the land and the note for the purchase

of the same, together with the contract, were all deposited with a third person, to be by him delivered, upon certain conditions; and that those conditions were not complied with. The deed seems to have been duly executed and recorded, and plaintiff offered it in evidence. The defendant objected to it on the ground that it had not been delivered. The delivery of a deed or other writing is as necessary to its validity as its execution, and it only takes effect from its delivery. (*Clayton* v. *Levirman,* 4 Dev. & Batt. 239.)

*John Currey,* for Respondent.

It is insisted, on behalf of appellant, that it was not competent for defendants to show an outstanding title in Mr. Woods, without showing connection with that title. The defendants, by producing the Woods deed in evidence, did not admit any title in him or in the plaintiff at any time; nor does the implication arise, that thereby the defendants conceded that plaintiff, or Woods ever was the owner of the land, or had any cause of action against them, as the plaintiff's counsel seem to believe. It would be quite as logical to hold that the production of evidence in contradiction of a fact alleged, admits the truth of the alleged fact, as to say that such a consequence follows from the production of the Woods deed in evidence.

In *Bird* v. *Lisbros* (9 Cal. 5, 6) the Court held, that prior possession is evidence of title; and that this evidence may be destroyed by abandonment; and the Court say: "In ejectment, the plaintiff must show title in himself, as against the defendant." This is a cardinal doctrine in ejectment, that has never yet been overthrown by this Court, notwithstanding the repeated efforts that have been made to induce such a result. The Court also say: " Suppose that the defendant had proved that Ralph Bird had previously conveyed the property in controversy to another party. He certainly could have done so, and that would have defeated plaintiff's action." In *Schauber* v. *Jackson* (2 Wend. 48) Senator Oliver said: " Suppose the plaintiff produces and proves a *prima facie* regular paper title, and the defendant shows conclusively that the whole claim of title is a forgery, is this unavailable to him because he is a naked possessor? Is not his possession good against all the world, except

the legal owner? Has it ever been questioned that a defendant in ejectment, though a naked possessor, may defend himself by showing that the plaintiff has sold and conveyed his right to the premises to a third person, before the commencement of the action?"

Did the defendants do otherwise, in the case at bar, than is said, in the two cases last cited, it was competent for them to do? It is argued on the part of the plaintiff, that a defendant cannot show an outstanding title to a third person, without connecting himself with it, when the plaintiff relies on prior possession; but it is admitted that he may do so, when the plaintiff predicates his right to a recovery, on what they denominate "strict title." And, in order to render his status invulnerable to the attack of the defendants, because of his relinquishment to Woods of all his alleged right and title in and to the premises, the plaintiff's counsel disclaim any right for their client subsisting in title, saying: "He relied upon his prior possession, and was therefore in the position, in which, as we claim, an outstanding title could not be set up against him."

The instances in which a defendant is not permitted to controvert the plaintiff's right to recover, by showing the title to be in a third person, when he does not show directly his connection with it, are exceedingly few, and the reasons for the rule that prevails in those cases are obvious, and are necessary to the preservation of the law as a system. These instances may be arranged as follows: 1st, when the defendant enters into possession under, or claims the possession through the plaintiff; 2d, when the plaintiff claims under a valid judgment or decree against the defendant, and purchase of the premises duly made by authority of such judgment or decree; 3d, when the defendant, without claim of title, is an intruder into and upon the plaintiff's actual possession of the premises demanded. (*Schauber* v. *Jackson*, 2 Wend. 62.) It will be seen in the first and second of these cases, there is a direct privity existing between the parties, in relation to the subject matter; and in the third, the objection is threefold against allowing the defendant to show a paramount title in a third person, without connecting himself with it. The first of which is, that the actual possession of the plaintiff, of which he has been tortiously deprived by the defendant, is of itself evidence of the title in fee in the plaintiff, or evidence

that he holds in subordination to the title in whomsoever it may be. The second is, that the defendant, as a naked intruder and tort-feasor, cannot be permitted to avail himself of a status which he has acquired by wrong, to put the plaintiff to other proof of his right to the possession, than the very actual possession of which the defendant tortiously deprived him.  And the third is, that the law does not accord to one who acquires possession by force and violence, the presumption that he entered upon the actual possession of the plaintiff in subordination to the better title, in the absence of affirmative evidence establishing his connection with it.   It is stated also in objection to the Woods deed, that it was executed and placed in the hands of Solomon A. Sharp, in escrow, to be delivered to Mr. Woods, on performance by him of conditions alleged; and that these conditions were not performed.   Nothing of this kind appears upon the face of the deed; nor is it pretended that any written contract was entered into by Mr. Woods with the plaintiff, to do anything whatever as a consideration for the plaintiff's release and quitclaim.   The consideration expressed in the deed was $5,000, and its payment was acknowledged, and the right of the plaintiff to contradict the truth of his acknowledgment in the deed of that consideration, is at least, questionable.   But suppose the Woods deed was placed in the hands of Mr. Sharp, upon the condition alleged by the plaintiff.   This condition might have been waived, or discharged without its performance ; and the presumption is, that its performance did not continue a condition to be performed before delivery of the deed; for otherwise it must of necessity be assumed, that not only was Mr. Woods guilty of fraudulently obtaining the deed, but that Mr. Sharp was equally guilty with him, by delivering the deed before performance of the condition.   Such a presumption will not be indulged, without affirmative proof of facts, from which as a legitimate deduction the presumption must follow.   (*Starr* v. *Peck*, 1 Hill, 272; 1 Story's Eq. Jur. Sec. 190.)

The entry of the Treats in Sept., 1850, was a trespass on the Government domain.   (U. S. Stat. at Large, 445, and Brightly's Dig. 487, Sec. 171.)   So was that of the plaintiff.   Neither the Treats, nor the plaintiff, were authorized to make an entry under

any Federal or State law.  The plaintiff did not claim any right as a preëmptor under any law of the United States; nor a right under the Possessory Act of this State, passed in 1852, because then he would have been required to limit his claim to one hundred and sixty acres ; but he relied, say his counsel, upon his prior possession.  The evidence shows that plaintiff entered into the employment of George Treat, in 1851.  He must be presumed to have known that Treat did not and could not acquire a right or title to so large an area by putting up an old fence across the neck that connected this peninsula with the main land.  He must have known that the possession of Treat to the extent of his occupation was a trespass; and that the quitclaim deed executed by him operated only as a release of the possession of the portion of the land actually occupied, and could not become the basis of an adverse possession to any land not actually occcupied by the releasor.  Such deed could not have the effect to extend, by construction, the plaintiff's right beyond that which he actually occupied, and of which he had, in the language of the authorities, the *possessio pedis ;* and it may well be doubted whether the possession which plaintiff obtained, if any, could be tacked to the prior possession of Treat.  (*King* v. *Smith*, Rice, S. C., 11; *Beadle* v. *Hunter*, 3 Strob. 331, 336.) In *Lessee of Potts* v. *Gilbert* (3 Wash. C. C. 475) Judge Washington expressed himself as clear, that where several persons enter into possession, the last cannot tack the possession of his predecessor to his own; and even if there had been conveyances, he asks, " what had any of them in point of title to convey ?"  The plaintiff did not, as we have already said, claim any right as a preëmptor under the laws of the United States; nor any right under the " Possessory Act " of this State.  He well knew that by such a claim he would be limited to one hundred and sixty acres—a quantity entirely too inconsiderable to satisfy one of his comprehensive grasp.  Hence, he has sought by this action to extend his claim (though thereby he trenched on the rights of the Government and its policy, as well as upon the rights of her citizens, who were allowed under the Act of Congress of 1853—10 U. S. Stat. at Large, 246, Sec. 6, extended by an Act of 1854; Id. 268—to settle on the unsurveyed public lands) to the whole peninsula of

Dyson *v.* Bradshaw.

1,500 acres.   If he could thus extend his right to the possession of 1,500 acres, why could he not have gained by the same means a right to 15,000 acres, if the Potrero Nuevo had contained so much ?   Will it be pretended that one who thus enters on a large tract of land surrounded by water that affords a barrier to the ingress of cattle, thereby acquires a right to the exclusive possession of the whole land ?   (*Preston* v. *Kehoe*, 15 Cal. 318 ; *Wolf* v. *Baldwin*, 19 Id. 313.)

CROCKER, J. delivered the opinion of the Court—NORTON, J. concurring.

This is an action to recover the possession of a large tract of about 1,000 acres of land in the City and County of San Francisco, known as the Potrero Nuevo.   The tract claimed by the plaintiff is bounded on three sides by Mission Creek, Precita Creek, and the Bay of San Francisco ; and on the other side by a line running from one creek to the other.   It seems that one Treat, in 1850, erected a house and corral on the tract, which was then vacant, and built a stone wall and fence from one creek to the other, thus making, with the bay and creeks, an inclosure in which cattle and horses were pastured.   In 1852, Treat conveyed the tract to Dyson, under which Dyson took and held possession, and claims the title thereto.   The defendants entered and took possession of portions of the tract at different times, without title.   In April, 1853, the plaintiff conveyed a portion of the premises, by quitclaim deed, to Robert E. Woods, under an agreement that Woods was to remove the settlers from the Potrero ; and the deed was placed in the hands of one Sharp, as an escrow, and was not to be delivered to Woods until the latter had removed all the settlers, as per agreement.   The case was tried by a jury, who found a verdict " in favor of the defendants, in consequence of the description contained in the deed from the plaintiff to Robert E. Woods—the land occupied by the defendants having been conveyed to said Woods."

The first point urged by the appellant is, that the Court below erred in admitting in evidence the deed from the plaintiff to Woods, on the ground that it was not pleaded, and the defendants did not

connect themselves with the title of Woods.  The plaintiff avers, in his complaint, that he was the owner of the premises, which is denied by the answer, and the deed was clearly admissible to disprove this averment and sustain the denial, as it showed that plaintiff had no title to that portion of the premises described in the deed. The objection that the defendants did not connect themselves with the title of Woods is equally untenable.  The appellant, to sustain this point, refers to several decisions of this Court, wherein it was held that in an action to recover the possession of real estate, brought solely on the prior actual possession of the plaintiff, a defendant, who is a mere trespasser, cannot justify his act by showing the true title to be outstanding in a third person.  (*Bird* v. *Lisbros,* 9  Cal. 1; *Piercy* v. *Sabin,* 10 Id. 22; *Coryell* v. *Cain,* 16 Id. 567.)  This rule has no application to the present case.  It properly applies to a case where the title of such third person is superior or better than that of the plaintiff, or adverse thereto, and it has no application in a case like the present, where such outstanding title was derived from the plaintiff. · In such case, it shows that the plaintiff has divested himself of all right to the possession by his own act, and that the right to maintain the action under his own claim of title is not in him, but in a third person.  It defeats his action more effectually than proof of an abandonment, which is clearly sufficient.  (*Bird* v. *Lisbros,* 9 Cal. 1; *Gluckauf* v. *Reed,* 22 Id. 468.)

The next point is, that the Court erred in excluding the evidence offered by the plaintiff to prove that Woods failed to comply with the agreement, which was a condition precedent to the delivery of the deed.  A deed takes effect only from the time of its delivery; and where a deed is placed in the hands of a third person as an escrow, as in this case, the grantee was only entitled to a delivery of the deed upon a strict compliance with the terms of the agreement, which was clearly a condition precedent to its delivery. (*Beem* v. *McCusick,* 10 Cal. 538.)  As was said in that case, a compliance with the agreement was " the only condition whereby Beem, the grantee, could acquire title;" and not having complied, it was held that the grantor had a right " to hold the contract void."  So here, the removal of the settlers from the Potrero was a

Dyson *v.* Bradshaw.

condition precedent to the delivery of the deed to Woods, and to the vesting of any title in him; and if true that he did not comply with or perform that agreement, then he acquired no title by the deed, and the plaintiffs had a right to treat the contract as void, Woods having died in the meantime. The Court therefore clearly erred in excluding this evidence; and this is fatal to the verdict, which shows by its own terms that it was founded entirely on this deed.

The learned and able counsel for the respondents urges with much force, that the land being a part of the public domain of the United States, Treat and the plaintiff were trespassers on the land, and had no right, under the Federal or State laws, to enter upon or take possession of more than one hundred and sixty acres, that being the quantity to which settlers upon the public lands are limited, by the Federal as well as by the State laws, except in cases of swamp and certain school lands under the State laws. There is certainly much force in the argument of the counsel, that to hold otherwise would defeat one of the wisest and most important provisions of our National and State land system, and open the door for an unlimited monopoly of the public lands, by those able to inclose them in large tracts. The contrary doctrine was, however, early established by this Court, and has been maintained ever since. The same point was distinctly raised and overruled in *Hicks* v. *Davis* (4 Cal. 67), which was very similar in its facts to the present case; and also in *Bradshaw* v. *Treat* (6 Id. 172), which was for a portion of the premises in controversy in this case. (See also *Plume* v. *Seward*, 4 Id. 94.) We do not feel at liberty to overrule a law of property so long established, and which might produce disastrous consequences. Besides, it is a point not necessary to be determined on the present appeal, as the judgment must be reversed for the reason before given.

The judgment is reversed, and the cause remanded for a new trial.