## BENJAMIN F. STANLEY

*v.*

## ELIZABETH D. VALENTINE *et al.*

1. CHANCERY—*relief under the general prayer.* Relief which is consistent with the facts stated in the bill will be granted under the general prayer, although not specifically prayed for.

2. DEED—*recording of escrow—passes no title.* A deed executed by the grantor and placed in the hands of a stranger, to be held by him until the grantee does a particular thing, and then to be delivered to him, and which, by accident or mistake, is placed upon record without ever having been delivered to the grantee, is, as to such grantee, absolutely void, and is a cloud on the grantor's title, which a court of equity will cancel.

3. RELEASE OF MORTGAGE—*effect of recording without delivery, as to judgment creditor.* A mortgagee executed a release to the mortgagor, and placed it in the hands of a third party, to be delivered upon the performance of certain things to be done by the mortgagor; the mortgagor never performed and the release was never delivered to him, but, by accident or mistake, the release was placed upon record: *Held,* that the judgment creditors of the mortgagor acquired no rights or advantage by the recording of the release, and that, on a bill by the mortgagee, they should be restrained from selling, under their execution, anything more than the equity of redemption of the mortgagor.

APPEAL from the Circuit Court of Cook county ; the Hon. WILLIAM W. FARWELL, Judge, presiding.

Messrs. PADDOCK & IDE, for the appellant.

Mr. JUSTICE WALKER delivered the opinion of the Court:

On the 4th day of November, 1872, appellant received from Elizabeth Valentine a mortgage on certain real estate in North Evanston, in Cook county, to secure the purchase

money for the property, and for which she had given her six notes, for different amounts, and payable on various dates, and amounting in the aggregate to $8500, and bearing ten per cent interest per annum. The mortgage was duly recorded on the 26th of February, 1873. About the 10th of March, 1873, she being desirous of raising money by loan, and to secure the same by deed of trust on the property, for the purpose of paying one of the notes she had given for the purchase money, of $3850, applied to Benjamin E. Gallup for a loan of $4000, who consented to make it if her title should prove satisfactory, except a prior mortgage and that given to appellant, and that appellant, on being paid the $3850, and being thereby enabled to pay the prior mortgage, would release his mortgage and take from her a new mortgage, subject to a mortgage to be given to Gallup, to secure the balance of his purchase money on the lots.

At the time this arrangement was agreed upon, appellant was on the eve of starting to New York, to be absent some time, and to enable the arrangement with Gallup to be carried out, he executed a release of his mortgage, and delivered it to Gallup, to be held in *escrow* until the transaction should be fully consummated, and then delivered to Mrs. Valentine. Appellant having gone East, by some accident or mistake the release was taken from Gallup's office to the recorder's office, and there filed for record, which appellee learned for the first time on his return from New York. No loan was ever made by Gallup to Mrs. Valentine.

On the 17th day of February, 1873, Thomas Cogswell and others obtained a judgment in the Superior Court of Cook county against Mrs. Valentine, for $500.18 and costs. And the same parties recovered another judgment against her, in the same court, on the 30th day of April, 1873, for $499.67 and costs.

The judgment creditors sued out executions, and placed them in the hands of the sheriff, who levied on these lots and advertised them for sale on the 31st of May, 1873. Appel-

lant, thereupon, filed this bill to have the release canceled, and the judgment creditors enjoined from selling the lots, unless it be subject to his mortgage. A temporary injunction was granted, but, on a hearing, the court below dissolved it, and dismissed the bill, and complainant appeals.

There is no pretense that Gallup had any, the slightest authority to deliver the deed of release until the condition was performed upon which it was placed in his hands, nor is it claimed that those conditions were ever performed, or that the release was rightfully filed with the recorder and spread upon the records. That was an accident or mistake, without either appellant or Gallup intending that it should be done, nor was there any delivery to Mrs. Valentine. It never went into her possession or came under her control, nor was it delivered to the recorder or any other person for her. As to her, then, the release in nowise changed or affected her rights, and was, so far as the apparent release of her mortgage was concerned, absolutely void, and was such a cloud on appellant's title as in equity required it to be canceled and she restrained from asserting any rights under it.

It is true, there is no specific prayer that it be canceled as to her, but the bill contains the general prayer for relief. No rule of chancery practice is more familiar than that other than the specific relief prayed will be granted under the general prayer, when consistent with the facts stated in the bill. Now, such relief in this case is perfectly consistent with and is not repugnant to or variant from the facts alleged and proved, and we presume no one would say the prayer would be defective had it been specifically made in this bill. It then follows, that it was error in the court below not to have retained the bill, and granted at least that relief.

But it is urged, that by filing the release for record the judgment creditors acquired a superior lien to that of appellant ; that the recording of the release, although by accident or mistake, let in their subsisting judgments as a lien that postpones appellant's mortgage to their debts. On the other

hand, it is claimed that, as the release was never delivered and was absolutely void, creditors or subsequent purchasers, although *bona fide*. acquired no rights thereby. The release never having been delivered, it became no more operative than had it been a forgery. The title of appellant could not pass from him until the deed was delivered. The judgment creditors had not been misled by the recording of the release to advance money, to give credit, or do any act on the faith that the release was valid and operative. Their position to the case is in no way changed, nor have they done any act which gives them a superior, or any equity whatever, to claim an advantage over appellant's mortgage.

It is manifest to all that a deed can not be operative until it is delivered. Perkins, who wrote his treatise on Convey-ancing more than three centuries since, says (sec. 138, p. 28,): "And if I make a deed, and deliver it to a stranger as an *escrowl*, to keep until such a day, etc., and upon condition that if, before that day, he to whom the *eserowl* is made shall pay me ten pounds, give me a horse, enfeoff me of a manor, or perform any other condition, then the stranger shall deliver the *escrowl* to him as my deed. In this case, if he deliver the same to him as my deed before the conditions or condition fulfilled, it is not my deed *simpliciter* ; but if the condition be fulfilled, and the *escrowl* delivered by him (after the condi-tions performed) as my deed, then it is my deed, and shall bind me—and then begins to be my deed, and shall not have relation to the first delivery." This, perhaps, is as early an announcement of the rule as may be found in the books, and is the same as the definitions given by courts and text writers since that time. We are aware of no change in the rule since he wrote. *Price* v. *Pittsburgh, Ft. Wayne and Chicago Rail-road Co.* 34 Ill. 13.

Then, if a delivery before condition performed confers no title, it is difficult to perceive how others can acquire title from the grantee named in the *escrow*. Washburn on Real Property, vol. 3, p. 372, says: "If a deed is delivered before

548                STANLEY v. VALENTINE et al.         [Sept. T.

Opinion of the Court.

the previous condition is performed, it will not be the deed of the grantor, or have any effect as such." And he refers to numerous authorities which support the text. The case of the grantee getting possession of the *escrow,* by fraud, before the condition performed, and then selling the land to an innocent purchaser, was fully discussed in *Shirley* v. *Ayers,* 14 Ohio, 308. The court say : "Until the performance of the condition, it (the deed) must remain a mere scroll in writing, of no more efficacy than any other written scroll ; but when, upon the performance of the condition, it is delivered to the grantee or his agent, it then becomes a deed to all intents and purposes, and the title passes from the date of the delivery. The delivery, to be valid, must be with the assent of the grantor. If the grantee obtain possession of the *escrow* without performance of the condition, he obtains no title thereby, because there has been no delivery with the assent of the grantor, which assent is dependent upon compliance with the condition." "The recording of an *escrow* does not make it a deed."

The court held, that although the grantee obtained the *escrow,* and placed it on record, and then sold it to an innocent purchaser, he acquired nothing by his deed, because his grantor never acquired any title by obtaining possession of the *escrow.* It is likened to a deed which the grantee had stolen, where no title is thereby acquired, and it is distinguished from one obtained by fraud from the grantor, when the title passes by the actual delivery by the grantor himself. See *Smith* v. *So. Royalton Bank,* 32 Verm. 341 ; *People* v. *Bostwick,* 32 N. Y. 450 ; *Everts* v. *Agnes,* 4 Wis. 453 ; *Black* v. *Shreve,* 13 N. J. 458 ; *Dyson* v. *Bradshaw,* 23 Cal. 536 ; *Ogden* v. *Ogden,* 4 Ohio St. R. 191. From these authorities it would appear that even a grantee is not protected by a purchase, however honestly and fairly he may have acted, unless there was a delivery to his grantor. But we are not required to go the length of the rule announced in these cases to hold the release inoperative and void in this case.

But here, the release never went into the hands of Mrs. Valentine. She did not know or intend that the release should be placed on record, hence this case is not as strong as some of those referred to above. We are, therefore. clearly of opinion that the judgment creditors acquired no rights or advantage by the recording of the release, and they should have been restrained from selling under their executions anything more than Mrs. Valentine's equity of redemption, and in refusing to do so the court erred.

In the light of the decisions referred to, there is no force in the objection that appellant, by making the *escrow* and placing it in the hands of an agent, and it having got upon the record, should be estopped to deny that it is his deed. We have seen that such is not the rule, and it should be especially so here, as the judgment creditors have advanced no money, given no credit, or done any act by which they have changed their attitude to the case.

For the errors indicated, the decree of the court below is reversed and the cause remanded.

*Decree reversed.*