(No. 12224.—Appellate Court reversed; circuit court affirmed.)
J. J. KIRBY, Plaintiff in Error, *vs.* JOHN F. JUDY *et al.*
Defendants in Error.

*Opinion filed December 18, 1918—Rehearing denied Feb. 6, 1919.*

1. FRAUD—*when release of trust deed by trustee is void.* Where a trustee in a deed of trust, who was illiterate and without experience in regard to trust deeds, is induced to sign a release of the deed upon a fraudulent misrepresentation of its true character by the parties to be benefited by the transaction, the release is void.

2. SAME—*when parties are not innocent purchasers.* The fact that the records show the release of a trust deed does not, of itself, make the guarantor and purchaser of a new trust deed and notes innocent purchasers, where there are circumstances connected with the transaction of such a suspicious nature as to put them upon inquiry, and where a mere inquiry by the trustee in the new trust deed would have disclosed that it was a renewal of the loan secured by the trust deed released and that the release was obtained by fraud.

3. SAME—*what circumstance is sufficient to put a bank on inquiry.* The fact that recently executed notes due in five years, bearing six per cent interest and secured by a trust deed on Illinois farm land, are offered to a bank in a foreign State at ten per cent discount, is a circumstance of such a suspicious character as to put the bank upon inquiry as to the transaction.

WRIT OF ERROR to the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Kankakee county; the Hon. ARTHUR W. DE-SELM, Judge, presiding.

E. P. HARNEY, and GRANGER, DOUGHERTY & NOURIE, for plaintiff in error.

H. H. WHITTEMORE, for defendants in error.

Mr. JUSTICE CARTER delivered the opinion of the court:

This was a bill brought by plaintiff in error, J. J. Kirby, in the circuit court of Kankakee county, to foreclose a trust deed. After the pleadings were settled a hearing was had

and evidence taken before the chancellor and a decree entered foreclosing said trust deed in accordance with the prayer of the bill. On appeal to the Appellate Court this decree was reversed and the cause remanded, with directions to dismiss the bill for want of equity. From that judgment the case has been brought here by petition for *certiorari*.

The trust deed in question represented part of the purchase money for 120 acres of land in said county sold by Louis Legacy to Aaron Forney and was given by Forney and wife to Legacy as trustee. The trust deed and note secured thereby were thereafter sold by Legacy to plaintiff in error, Kirby, a banker in Momence, in said county. The land in question thereafter became the property of James C. Norman and J. C. Hendrix, who had taken the title to the same in the name of John C. Norman, a son of James. On March 9, 1916, James C. Norman and Hendrix entered into an agreement in writing for the exchange of said land with John F. Judy for an apartment building in Bloomington, Illinois. As the Legacy trust deed fell due by its terms on April 5, 1916, it was stipulated in the agreement between Norman, Hendrix and Judy that Norman was to procure a renewal or extension of the trust deed for at least three years. The evidence tends to show that Norman and Hendrix on March 29, 1916, visited Kirby in Momence and after a conference agreed with him for a renewal of the trust deed for five years; that thereafter Kirby prepared a new trust deed and notes, naming as trustee Edward P. Cleary, assistant cashier in the bank at Momence of which Kirby was cashier, and gave them to Norman to take to Bloomington to have them signed by his son, John. Norman and Hendrix having theretofore learned from Kirby that Legacy, the trustee under the old trust deed, lived only a few miles from Momence, made an arrangement with Walter S. West, a real estate agent in Momence who had formerly been employed by them, to arrange for a meeting with Legacy and to take with them in the automobile to

this meeting Hardin E. Vail, a justice of the peace, to take Legacy's acknowledgment. Norman wrote Kirby before this that he wanted to get Legacy's address to get from him a release or receipt for a $2000 payment which had been made on the loan since the trust deed was given. The four men went together in the automobile to see Legacy. Because the stone road from Momence ended at some distance before reaching Legacy's residence and the dirt road was bad at that time, Legacy, over the 'phone, agreed to meet them at the end of the stone road. The evidence tends strongly to show that Legacy was a young farmer who spoke English imperfectly, was illiterate and never had had any experience with mortgages, trust deeds or releases except in taking the trust deed here in question. While the evidence is not in complete harmony from the five people who were present at the signing of the release, it is manifest from the testimony of all of them that Legacy was reluctant to sign the release which had been brought along by Hendrix and Norman releasing the trust deed owned by Kirby, and which was not for only the $2000 that had been paid but of the entire loan. He testified that he did not wish to sign anything as it might get him into trouble and told them he did not want to do anything toward getting a new loan. He testified positively that he did not understand what the release was, and that he did not understand for what purpose he was signing this release except that they said they wanted to obtain a new loan on the premises; that he asked the justice of the peace and West, both of whom he knew, whether it was all right to sign the release, and he understood them both to assure him it was all right and he thereupon signed, Vail taking the acknowledgment and Hendrix paying him a dollar before they departed. It is clear from the testimony of West and Vail that they were of the opinion that Legacy did not understand what he was doing, and the evidence also tends to show that West did not understand until the release had

been signed that it was a release but thought that they wanted Legacy to make an affidavit. He said in his testimony that after he found it was a release and Legacy had signed it he did not feel at liberty to interfere, as it was none of his business. It is quite evident he felt this way, because he had been theretofore employed by Norman and Hendrix and was at that time employed by them to take them out to get the paper signed. The testimony of Norman and Hendrix is to the effect that the release was read by one of them, or by Vail, to Legacy, while the testimony of the other three is to the effect that only parts of it were read. The evidence of all three witnesses, beyond question, tends strongly to show that Legacy, with his imperfect understanding of the English language and his lack of experience in matters of this kind, did not know what the release was or its effect, and that he relied upon the advice of West and the justice, Vail, and because of their assurances he signed the release.

The evidence also shows that after obtaining the signature of Legacy to the release Norman and Hendrix the next day, March 30, obtained the signature of the son, John C. Norman, to the new trust deed that had been prepared by Kirby, running to Cleary, as trustee, and the notes for $6000 secured thereby, and on March 31 recorded the release and the new trust deed. After having procured a continuation of the abstract, Norman and Hendrix went to Lafayette, Indiana, April 1, where they met Judy to close their trade with him as to the apartment building in Bloomington. When they exchanged deeds it developed that Judy's title to the Bloomington property rested on a foreclosure where the master's certificate of purchase had been issued to Judy but he had not received the deed. The evidence also tends to show that he had not received the deed at the time of the hearing in the circuit court. At the time of closing this trade and the transfer of papers Norman showed Judy the new notes and trust deed, and Judy in his

testimony admitted that he was surprised at this, as he had understood the new notes were to go to Kirby, in Momence, in renewal of the trust deed. The evidence tends to show that in spite of this surprise and without making any further investigation, Judy, at Norman's request, signed his name on the notes as endorser, thus guaranteeing their payment and enabling Norman to dispose of them more readily. The next day after this trade Norman went to the Farmers and Merchants State Bank at Attica, Indiana, at which Judy did his banking, and sold this new trust deed, and the notes secured thereby, at a ten per cent discount. Before buying them an officer of the bank talked with Judy over the telephone at three different times, discussing the purchase of the paper with him. Judy told the bank officials that the sale of the trust deed and notes in Indiana was unexpected and quite different from what he had anticipated, as he understood these notes were to go back to Momence as a renewal of the former trust deed, but he would rather his bank had them than anyone else. A few days after this Kirby's trust deed became due, and not hearing from Norman and Hendrix he had the records looked up and found that the release in question had been recorded. He immediately spread upon the record a caveat and soon after filed this bill to foreclose the trust deed, claiming therein that the loan secured by his trust deed was a first and prior lien over the trust deed purchased by the Farmers and Merchants State Bank of Attica. Judy filed an answer, claiming to have bought the land in question without notice of any irregularities in obtaining or recording the release, and the bank set up in its answer that it had acquired the new trust deed in question without notice of any irregularities and claimed a first lien on the land.

In *Stanley* v. *Valentine*, 79 Ill. 544, and *Chicago Land Co.* v. *Peck*, 112 id. 408, a trustee in each case who understood perfectly the purpose of a release executed and acknowledged one and left it in the hands of a third party

in escrow, to be delivered upon the performance of certain conditions, and the party entrusted with it having recorded the release in violation of his instructions, it was held in each case that the release was void and of no more force than if it had been a forgery. There the fraud or mistake was in the delivery of the release; here the fraud or misrepresentation was in its execution, but the same rule should obtain as to its being void.

Counsel for defendants in error argues that if there was any fraud or misrepresentation in obtaining this release it was in the consideration and not in the execution of the release. With this we do not agree. Neither do we agree with the statement in the opinion of the Appellate Court that Legacy, as trustee, fully understood what he was doing when he signed the release. True it is, he was told it was a release; but the evidence, as we have already stated, shows that he did not understand its purpose or effect and only signed because he was told by his friends West and Vail that it was all right. In our judgment the evidence clearly shows that Legacy was misled by misrepresentations as to what he was doing and the effect of executing this release. The testimony of the witnesses who were present at the time of the execution of the release is in conflict, and in a court of review, under the circumstances shown here, the findings of the chancellor, who saw and heard the witnesses in open court, should, unless the record on its face shows clear and palpable error, be given great weight. (*Coari v. Olsen,* 91 Ill. 273; *Brown v. Stewart,* 159 id. 212; *Mayrand v. Mayrand,* 194 id. 45; *Bouton v. Cameron,* 205 id. 50.) We find no such palpable error in the record here, and we therefore conclude that the Appellate Court was wrong in finding that there was no fraud shown in obtaining the execution of this release, and we believe that the decree of the circuit court on that point should be affirmed.

The most serious question in this case is whether or not the Farmers and Merchants State Bank and Judy were in-

nocent purchasers for value of the new trust deed and the notes secured thereby and of the land subject thereto, respectively. It is argued by counsel for defendants in error that the record shows that his clients acted in good faith in accepting and purchasing this trust deed and the notes secured thereby and the land, upon what was disclosed by the record concerning the condition of the title, the record showing the release of· the trust deed, and that they had no notice of any irregularity in its execution, as nothing appeared of record in any way to put them upon inquiry. In the early case of *Doyle* v. *Teas,* 4 Scam. 202, this court said (p. 249) : "After all, hereafter, as heretofore, each case must be governed by its own peculiar circumstances, and where the court is satisfied that the subsequent purchaser acted in bad faith, and that he either had actual notice or might have had that notice had he not willfully or negligently shut his eyes against those lights. which, with proper observation, would have led him to knowledge, he must suffer the consequence of his ignorance and be held to have had notice so as to taint this purchase with fraud in law. It is sufficient if the channels which would have led him to the truth were open before him and his attention so directed that they would have been seen by a man of ordinary prudence and caution if he was liable to suffer the consequences of his ignorance. The law will not allow him to shut his eyes when his ignorance is to benefit himself at the expense of another, when he would have had them open and inquiring had the consequences of his ignorance been detrimental to himself and advantageous to the other."

In *Ætna Life Ins. Co.* v. *Ford,* 89 Ill. 252, this court said (p. 254) : "It is insisted that appellant was only required to examine the record of deeds, and had that been done no mortgage would have been found or anything putting the company on inquiry. As a general rule such is the case, but any notice or circumstance that tends to give notice or informs the party that there is an incumbrance is

sufficient to charge him with notice. When such information comes to the knowledge of a purchaser the law requires him to pursue it until it leads to notice. * * * Actual notice or circumstances which would excite suspicion, and which, when pursued to the source to which they point, would lead to notice, is equally sufficient to charge a purchaser with notice as are recorded instruments."

In *Blake* v. *Blake,* 260 Ill. 70, this court said (p. 75): "Whatever is notice enough to excite attention and put the party on his guard and call for inquiry is notice of everything to which such inquiry might have led, and every unusual circumstance is a ground of suspicion and prescribes inquiry."

The doctrine as laid down in the cases already cited on this question was re-affirmed in the late case of *German-American Bank* v. *Martin,* 277 Ill. 629.

When the trade between Judy, Norman and Hendrix was negotiated it was understood that Norman and Hendrix were to get the trust deed on the farm extended and the Cleary trust deed and notes were prepared with that understanding, and Judy admits he was surprised when he found that the new trust deed was not held by Kirby. The fact that Norman made the unusual request for him to endorse the notes, thereby guaranteeing them, together with the fact that he expected the notes and trust deed to be in Kirby's possession and found them held otherwise, was sufficient to put him on notice that something out of the ordinary was taking place with reference to this trade. These were suspicious circumstances that demanded inquiry on his part. Then, too, the notes and trust deed were not disposed of in Bloomington, where Norman lived and was known, or in Kankakee county, where the land was located, but were sold at Attica, where Judy usually transacted his business, and these notes, bearing six per cent interest and secured by trust deed, were sold to the bank at a discount of ten per cent. The evidence shows that Judy was a man of

quite extensive affairs, dealing in lands and personal property and other transactions involving a knowledge of values. It is a matter of common knowledge, of which this court may take cognizance, that well secured six per cent first mortgage loans on Illinois farm land are not usually sold at a large discount. The sale at this discount in the foreign State of Indiana was surely a circumstance which should have put both Judy and the bank on notice as to the suspicious nature of the transaction. The bank representative called up Judy three different times on the telephone, and it seems quite clear from the record that because of the assurance of Judy in these telephone conversations that he had backed the notes, guaranteeing them, the bank finally purchased them. It would therefore appear that the suspicions of the bank were actually aroused by some of the circumstances. We think, under the authorities of this court heretofore cited, these unusual facts were enough to put both the bank and Judy on notice of the fraudulent character of the transaction, so that if they had followed the matter to an easy conclusion by inquiring of Kirby as to whether his trust deed had been paid and properly released they would have easily found out the true situation.

On the facts in this record we conclude that Judy and the Farmers and Merchants State Bank of Attica are not innocent purchasers for value without notice but are charged with notice of the fraudulent nature of the transaction in securing said release. This conclusion is further borne out by the fact that the chancellor heard these witnesses in open court and reached this conclusion, and the record discloses no clear and palpable error which would require a court of review to overrule his findings.

The judgment of the Appellate Court will be reversed and the decree of the circuit court will be affirmed.

*Judgment of Appellate Court reversed.*
*Decree of circuit court affirmed.*