NELLIE DOUGLAS *et al.*

*v.*

PLEASANT WEST.

*Filed at Springfield March 26, 1892.*

1. DEED—*delivery to third person—presumption in favor of grantee.* The owner of real estate made and executed a deed for the same to his four infant grandchildren, reserving the use of the property during his life and that of his wife, who united with him in its execution and acknowledgment. Afterward he caused the deed to be placed in the hands of a neighbor and friend to be taken care of, but gave no specific directions to hold it until the death of the grantors and then deliver it to the grantees. His previous statements to the custodian, however, showed an intention that the grantees should have the property after his death: *Held,* that such statements, in connection with the fact that the grantor never took the deed from the custodian, but let it remain until his death, showed that the delivery was intended for the grantees therein named.

2. SAME—*delivery to third person—effect of destruction of deed by one of the grantors.* Where the grantor of land delivers the deed to a third person to keep for the grantees, who are infants, until his death and that of his wife, the fact that after his death his wife may obtain and destroy the deed will not affect the question of its delivery.

3. SAME—*presumptions of delivery in voluntary settlements made to infants.* The law presumes much more in favor of the delivery of deeds in case of voluntary settlements, especially when made to infants, than it does in ordinary cases of bargain and sale.

4. SAME—*no formality required to constitute delivery.* To constitute a delivery of a deed no particular formality is required, provided it appears that the grantor intends to part with his title and the control

of the instrument passes to the grantee, or to some third person for the grantee. When the deed reserves the control of the property during the life of the grantor, the delivery may be made to a third person for the benefit of the grantee, and such delivery will not be inconsistent with the rights so reserved.

APPEAL from the Circuit Court of Vermilion county; the Hon. FRANCIS M. WRIGHT, Judge, presiding.

Messrs. LAWRENCE & LAWRENCE, for the appellants:

No particular form of delivery is required, and the question whether there was a delivery or not, so as to pass the title, depends upon the peculiar circumstances of each particular case. It becomes, in such case, a question of intention upon the part of the grantor to make the instrument his deed and pass the title to the grantees. If the proof shows that it was the intention of the grantor that the instrument was to pass into the hands of the grantees, it is valid, though it never did come into their hands. *Jordan* v. *Davis*, 108 Ill. 336; *Warner* v. *Sweet*, 31 N. H. 332; *Stevens* v. *Hatch*, 6 Minn. 64; *Newin* v. *Bealer*, 41 Iowa, 334; *Walker* v. *Walker*, 42 Ill. 311; *Masterson* v. *Cheek*, 23 id.76; 1 Devlin on Deeds, sec. 262.

When the grantor has done everything he could to pass the title to the infants, and it being for their benefit, they are presumed to have assented to it, and the possession of the deed by the grantor is presumed to be their possession. *Bryan* v. *Wash*, 2 Gilm. 568; *Souverbye* v. *Arden*, 1 Johns. Ch. 256; *Stringham* v. *Wood*, 15 Wend. 545.

When a deed is delivered to a third person, to be delivered after the death of grantor, the title passes as of the time of first delivery. *Ball* v. *Foreman*, 37 Ohio St. 132.

Mr. CONSIDER H. WILLETT, and Mr. C. PORTER JOHNSON, for the appellee:

Mrs. Moore being the mere agent of Brewer to safely keep the deed, her authority was revoked by the death of the latter. Mechem on Agency, sec. 240.

The principle of law which should control this case is, that a deed is never delivered so long as it remains in the control of the grantor. *Benneson* v. *Aiken,* 102 Ill. 284; *Byars* v. *Spencer,* 101 id. 429; *McElroy* v. *Hiner,* 133 id. 156; *Weber* v. *Christen,* 121 id. 91; *Williams* v. *Schatz,* 42 Ohio St. 47; *Huey* v. *Huey,* 65 Mo. 689; *Cook* v. *Brown,* 34 N. H. 360.

A deed remaining in the possession of the grantor, (or in the possession of the grantor's agent,) to be delivered, to take effect after the grantor's death, is void for want of a delivery during his lifetime. *Otto* v. *Doty,* 61 Iowa, 23; *Weisinger* v. *Cook,* 67 Miss. 511; *Gilmore* v. *Whitesides,* 31 Am. Dec. 563; *Basket* v. *Haskell,* 107 U. S. 602; *Jackson* v. *Leek,* 12 Wend. 105; *Jackson* v. *Eames,* 12 Johns. 418.

A deed can not be made by a grantor to be held by him during his life, to be delivered after his death, to take the place of a testamentary disposition of his property, because such act violates the Statute of Wills. *Blackman* v. *Preston,* 123 Ill. 381; *Stillwell* v. *Hubbard,* 20 Wend. 43; *Paterson* v. *Snell,* 67 Me. 559; *Shurtleff* v. *Francis,* 118 Mass. 154; *Mitchell* v. *Smith,* 4 DeG., J. & S. 422.

Mr. CHIEF JUSTICE MAGRUDER delivered the opinion of the Court:

This bill was filed on May 20, 1889, by Nellie Douglas, Stella Douglas, Leona Douglas and Franklin Douglas, (the latter a minor suing by his next friend), who are the appellants herein, against Pleasant West, the appellee herein, to restore a lost deed and perfect the title of the complainants to the premises therein described and for partition, etc. After hearing had upon bill, answer, replication and proofs taken, both oral and documentary, the court below dismissed the bill for want of equity, and this appeal is prosecuted from such decree of dismissal.

Without setting forth the pleadings or going into an extended review of the evidence, we will content ourselves with

stating such of the facts as we deem to be material in the decision of the cause. Thomas D. Brewer and Ann Brewer, his wife, were very old and had no children. He died on June 26, 1885, when he was over eighty years old, and she died on December 14, 1888, at the age of about ninety one years. For many years prior to the fall of 1884, they had resided in Yellow Springs, Greene County, Ohio, but some time in October, 1884, they removed to Danville, Illinois, where they had formerly lived before going to Ohio, and where Thomas had considerable property, and where he and his wife had many relations.

The complainants and the defendant are nieces and nephews of Mrs. Brewer. The defendant appears to have been a man of shrewdness and experience. He attended to the business of Mr. Brewer for about thirteen years both during the latter's residence in Ohio, and while he lived in Illinois. In the summer and fall of 1884 the complainants were minors, and the defendant was their guardian. On June 7, 1874, Mr. Brewer made a will and therein devised all his real estate to his wife during her life, and, at the death of himself and wife, all his "real estate not disposed of" to Pleasant West, the defendant. There was a bequest of money to Carolina Yapp; and Jacob Yapp, the defendant's father-in-law, a farmer, lumber dealer and justice of the peace at Georgetown, was made executor in the will. The will was made in the office of Yapp and was left with him at the time of its execution and remained with him or with the defendant for eleven years and until the death of the testator.

In May, 1884, Brewer conveyed a valuable piece of property in Danville to the defendant. In August, 1884, while in Ohio, he executed a deed of a lot in Urbana, Illinois, to a nephew named Davis, and delivered the same to Davis after his return to Illinois. He also executed a deed of a lot in Danville to a nephew named Douglas, and a deed of another lot in the same town to a niece named Brewer.

In September, 1884, shortly before returning to Illinois, and in pursuance of a previously expressed purpose to do so, Thomas D. Brewer and his wife executed a deed, conveying to the complainants lot 7 in Block 4 Range 1 East in Cunningham's Addition to Danville, on which was situated a large building, known as the Roland Boarding House. This deed was drawn by J. W. Hamilton, a justice of the peace in Yellow Springs, in Ohio, and was executed and acknowledged before Hamilton by Mr. and Mrs. Brewer, and was witnessed by a man named Finderbaugh. It was handed to Mrs. Brewer and brought by her to Illinois. Some testimony was introduced by the defendant for the purpose of proving that this deed was not made by Mr. Brewer, but we think that its execution is clearly established; and counsel for appellee admit in their brief that it was signed and acknowledged by Brewer and his wife, conveying said property to the complainants. Hamilton, before whom the deed to Davis was acknowledged, swears that the deed to complainants, like that to Davis which is in the record, contained a clause by which the grantors reserved to "themselves and either of them absolute control of said property during their lives."

The only material question in this case is: was there a delivery of said deed of lot 7 to the complainants as grantees therein during the life-time of Brewer?

In December, 1884, Mr. Brewer told Mrs. Brewer to hand the deed to Mrs. Mary A. Moore, and accordingly Mrs Brewer delivered the deed to Mrs. Moore in Mr. Brewer's presence. Mrs. Moore was an old friend of Mr. and Mrs. Brewer; she had known them for over fifty years; she was their neighbor in Danville, living about a half block from them and on the same street; they staid at her house during a part of the previous summer and she frequently visited them at their house. The deed remained in the possession of Mrs. Moore until after the death of Mr. Brewer. It was obtained from her posses-

sion in August, 1885, and destroyed under the circumstances hereinafter stated.

When Hamilton was requested by Brewer in Ohio to draw the deed, he did not have the description of the property and wrote to West in Illinois to get the description. He was told by Mr. and Mrs. Brewer, that they did not want West to know that they were conveying the property to the Douglas children. They told him, that they had given West enough, that he was greedy and wanted more, and that the Douglas children were relatives and were poor, and that they felt it their duty to give something to them, as well as to Davis. The following is a quotation from a letter written by Hamilton to West on September 23, 1884: "At first they appeared to accept the proposition you made for them to go to your place, but to convey property or give up any of their property in any form, they would then object; * * * they are opposed to you making any investments in property, and say if they went to Ill. they would live in Danville in their own property, and would not go to Georgetown," where West lived. Hamilton swears, that they said they wanted to convey the boarding-house lot to the Douglas children, but to control the property during their lives and collect the rents to live on.

Hamilton accompanied the old people to Illinois, and they arrived in Danville on October 15, 1884, and were met at the depot by West. They went to the Roland boarding house. West then learned from Hamilton that a deed had been made to the Douglas children, and that the description had been sent for in order to draw such a deed. Brewer and his wife had not been in Danville more than two weeks before West saw and examined the deed. He said that Mrs. Brewer obtained it and brought it to him for examination. It was not left with the defendant. It is clear to us from the evidence, that Mr. Brewer was afraid of West, and desired to keep this deed away from him. It is said that it was not delivered to Mrs. Moore for the Douglas children, but to hold for a temporary

purpose, and that she was acting merely as the agent of the grantors while she was custodian of the deed. But we do not think the evidence supports this theory. It is claimed, that Mr. and Mrs. Brewer were fixing up a new house, and that Mrs. Moore was to hold the deed until the house was ready. But after they were settled in the new house, Mr. Brewer still permitted Mrs. Moore to keep the deed, and she had it when he died.

"The law presumes much more in favor of the delivery of deeds in case of voluntary settlements, especially when made to infants, than it does in ordinary cases of bargain and sale." *Bryan* v. *Wash,* 2 Gilm. 557; *Rivard* v. *Walker,* 39 Ill. 413. Jerome Douglas lived with the old folks in the fall of 1884, and saw the deed and read it. He swears, that Mr. Brewer wanted him to read the deed to him to see that it was all right, and wanted somebody to take it, and he says: "He offered it to me, and I told him I was young and did not want to do so, and would rather he would give it to some older person, and he spoke of Mrs. Moore, and I told him she was a better person. * * * He said he wanted the deed kept for those children, so they could get the property. * * * The old man told me he had given it to Mrs. Moore—said he wanted some honest person to keep it."

Mrs. Moore, to whom the deed was given after it was offered to Jerome Douglas, says: "There was not much said about the deed. They asked me several times if I would take it and keep it. * * * I said yes, I would try to take care of it; do the best I could if they wanted me to; so finally she gave it to me one day. Mr. Brewer told her to give it to me. They had been talking about it and then would forget it I suppose. I don't think anything particularly was said at the time only: "Here is the deed for you to take care of." Did not say for me to do anything with it, only to just keep it. They told me what the deed was for before I ever saw it. He said they had made the deed to those children, and he thought

they needed it.   He talked a great many times about it; I did not only hear it once but always."

Although it is true, that, when the deed was handed to Mrs. Moore, she was not specifically instructed at that time to hold it until the death of Mr. and Mrs. Brewer and then deliver it to the complainants, yet the act of delivery must be considered in connection with what he had previously said to Mrs. Moore, in order to determine what his intention was in making the delivery.   Such previous statements clearly show, that he intended the Douglas children to have the deed and the property described in it, and, when these statements are considered in connection with the fact that he never took the deed from Mrs. Moore but left it with her until his death, it is manifest that the delivery to her was for the grantees in the deed.

Peyton Douglas swears, that Mr. Brewer told him that he had deeded the property to the complainants, and "that Mrs. Moore had the deed."   Mrs. Moore says: "He said he had the boarding house deeded to Mrs. Douglas' children, and that he had deeded the other half to Pleas. West; and he said: 'That is all he is going to get from me; I think those children need it.'   This was the kind of talk he talked about; and they were to have it when he was gone.   He first said he had made the deed to the children, and I took the deed, and did not tell me what I was to do with it."   While the deed was in the possession of Mrs. Moore, she says that she and Nellie Douglas, one of the grantees, took the deed and went together to a lawyer to have it examined.   N. W. Davis swears, that he went to his uncle's house in the fall of 1884 to receive his own deed; that Nellie Douglas was there at that time visiting the old folks; and that he heard Mr. Brewer say, in the presence of Nellie, "that he had given this boarding-house, as he called it, to the Douglas children   *   *   *   Nellie and the three others."   Mary E. Douglas swears, that she saw the deed at their house; that Mrs. Brewer handed it to her to read; that "they sent for me one day to come up, and they were

going to give me the deed to hold. He said: 'we have studied about it, and we think we will give it to a disinterested party; we are going to give it to Mrs. Moore.'" She further swears, that Mr. Brewer told her that Mrs. Moore was to deliver the deed to complainants upon the death of himself and his wife. Siegel Douglas says: "After he came back heard him say that he had made a deed to them for the Rowland boarding house, and that Mrs. Moore had the deed in her possession. Nellie was present in the room, * * * he said he had given the other part of the lot to Pleas. West, and it was all he would give him—that he had helped him enough."

The fact, that Mrs. Brewer obtained the deed after the death of her husband, and destroyed it, makes no difference, so far as the question of delivery to Mrs. Moore by Mr. Brewer is concerned. Mr. Brewer, and not Mrs. Brewer, was the owner of the property. To constitute the delivery of a deed no particular formality is required, provided it appears that the grantor intends to part with his title, and the control of the instrument passes to the grantee, or to some third person for the grantee. (*Roane* v. *Baker,* 120 Ill. 308; *McElroy* v. *Hiner,* 133 id. 156; *Hill* v. *Hill,* 119 id. 242; *Gunnell* v. *Cockerill,* 79 id. 79; *Bryan* v. *Wash, supra.*) As the deed upon its face provided for the control of the property by the grantors during their lives, the delivery of the deed to Mrs. Moore for the benefit of the owners of the reversionary estate and with the intention of vesting the fee in the grantees subject to the life estate, was consistent with the exercise of such control over the property by the grantors, and did not in any way interfere with their right to control the premises, nor diminish or abridge the interest reserved to them by the terms of the instrument.

We cannot, however, resist the conclusion, that the act of Mrs. Brewer in obtaining this deed from Mrs. Moore was prompted by the defendant. In August, 1885, after the death of her husband, Mrs. Brewer, then an old lady nearly ninety

years of age, and about to leave her own house to go to live
with the defendant, went to Mrs. Moore's house and obtained
the deed, while the defendant was waiting for her at her own
house.   Mrs. Moore says: "She came after it some time after
he died and before she moved away to West's.  She came over
in a hurry and asked me if I would give her that deed.  I gave
it to her and asked her what she was going to do with it, and
she said:   'I think Mr. Brewer would have changed his mind
if he had lived.'   She said Mr. West was at her house.  That
is the reason I asked her what she was going to do with it.
This must have been in August.  She was then quite feeble—
had been paralyzed—but got around, and was over at my
house a good deal.  Have not seen the deed since she got it."
Before Mr. Brewer died he had intrusted all his papers except
this deed to the custody of the defendant.   The defendant
says:   "I had charge of her papers and the old gentleman's
after his death.   I examined among them for the deed and
did not find it."

   After Mrs. Brewer obtained possession of the deed, she went
to the defendant's residence and lived with him until she died.
The defendant swears, that Mrs. Brewer told him she had
burned the deed.   Maria Douglas, whom the defendant hired
to nurse Mrs. Brewer, and who took care of her during the
last year of her life at defendant's house, swears that Mrs.
Brewer said she had burned the deed.   Although the defend-
ant was the guardian of the complainants, he made no effort
to preserve this deed for them, although he knew of its exist-
ence, and although the old lady, who was in possession of it,
was an inmate of his house and under his care and influence.
He says:   "I was guardian of these four children then.  I did
not request to see this deed as their guardian.   *   *   *   I
had all but this deed—had them deposited—and the will.
This deed I never had in my possession.   *   *   *   I never
made any objection to their burning it.  I told them to do just
as they saw fit.   If they wanted to pull loose from me, to do

it. * * * I told them emphatically, at the time, that if it was their desire that this boarding-house should go to other parties, and they wished to quit me, they were at liberty to do so, and if they had more confidence in anybody else to take charge of them and their property in their feeble days, that I would gladly quit," etc.

Under the will of this old man, appellee was to get all the real estate remaining undisposed of at the testator's death. If, therefore, the deed to these minor children, three of them girls—of whom appellee was the relative and legal guardian, and whose interests he was in duty bound to protect—should be made way with, the property described in the deed would come to him under the will, which had been drawn in the office of his father-in-law, and, according to his own evidence in this case, had been taken by him into his possession before the death of the testator. Thus occupying the double position of devisee under the will and of guardian of the grantees in the deed, he visits the house of this feeble and paralyzed old lady, and, while he waits there, she goes out and obtains the deed made to these children from the custodian with whom their uncle had left it. Thereafter the old lady is taken from her home in Danville to appellee's house in Georgetown, where she remains during the rest of her life under the control of appellee. Some time during this period the deed is destroyed, but the will appears upon the records of the Probate Court.

The decree of the Circuit Court is reversed, and the cause is remanded to that Court for further proceedings consistent with the views herein expressed.

*Decree reversed.*

Mr. Justice Wilkin: I do not concur in the views expressed in the foregoing opinion.