JAMES SHIELDS

v.

CHRISTIE BUSH et al.

*Opinion filed February 20, 1901—Rehearing denied April 10, 1901.*

1. DEEDS—*what constitutes a good delivery.* A voluntary conveyance from husband to wife is well delivered where it was recorded by the grantor with the grantee's knowledge and assent and was afterwards in her possession, and found, after her death, in the custody of her father, and where, after executing the deed, the grantor expressed himself as satisfied therewith and announced that it was his intention to thereby give the property to grantee.

2. HOMESTEAD—*deed from husband to wife not joined in by wife does not pass title to homestead.* A deed from husband to wife, signed and acknowledged by him alone, conveying the homestead lot and also farm property, is void as to the homestead property, where the same does not exceed $1000 in value, and passes no title thereto.

3. JUDGMENTS AND DECREES—*when decree may grant relief without cross-bill.* If a bill prays that complainant's deed to homestead and farm property be set aside and canceled, or, if such relief is refused, that "the court construe the deed and determine whether any title of estate passed by said deed," it is proper for the court, on setting aside the deed as to the homestead, to declare the deed valid as to the farm property even though no cross-bill was filed.

APPEAL from the Circuit Court of McLean county; the Hon. COLOSTIN D. MYERS, Judge, presiding.

The original bill in this case was filed on March 24, 1899, and the amended bill was filed on May 27, 1899. The bill, as originally filed by the appellant, James Shields, and as subsequently amended by him, seeks to set aside a deed of certain lands, made by him to his wife in her lifetime, as a cloud upon his title to such lands. The defendants to the bill are the heirs of the deceased wife of the appellant. The cause was referred to a master in chancery to take proofs, and report the same to the court together with his findings thereon. The master took testimony, and made a report, in which he recommended that the bill be dismissed for want of equity. Objections were filed to the master's report and overruled.

On May 29, 1900, the circuit court rendered a decree overruling all the exceptions to the master's report except No. 19, which was sustained, and finding the issues in favor of the defendants below, the appellees here, except as to the homestead premises. The present appeal is prosecuted from the decree so entered by the circuit court on May 29, 1900.

The facts, as developed in the pleadings and proofs, are substantially as follows:

The appellant, James Shields, was on September 12, 1893, a widower, about seventy-six years of age, and having children by a former deceased wife. On that day, to-wit, September 12, 1893, he married one Catherine Bush, a spinster, aged forty-four years, of Clark county, Kentucky, the appellant being a resident of the village of Holder, in McLean county, Illinois. About three months after the marriage, to-wit, on December 22, 1893, the appellant executed a deed to his said wife, Catherine B. Shields, conveying to her lot 1, in block 6, in said village of Holder, and a strip of land connected with the same, together constituting the homestead premises of appellant and his wife, and also eighty acres of land in said county. The deed is in the statutory form, and recites that the grantor, James Shields, "for and in consideration of love and affection and the sum of $1.00 in hand paid, conveys and warrants to his wife, Catherine B. Shields, * * * the following described real estate," etc. The deed releases and waives all rights under and by virtue of the homestead exemption laws of the State; and it also contains the following provision: "This deed is made subject to a life estate in the grantor, James Shields, for and during his natural life in all of the real estate herein conveyed." The deed in question was not signed or executed by Catherine B. Shields, the wife of the appellant.

On December 20, 1898, Catherine B. Shields, the wife of appellant and the grantee named in the deed above

mentioned, died intestate and without children in the State of Kentucky, leaving her surviving, as her heirs-at-law, her husband, James Shields, and her father and certain brothers and sisters living in the State of Kentucky.

The final decree, entered by the court below, finds that on December 22, 1893, appellant filed said deed for record in the recorder's office of McLean county; that he afterwards delivered the deed to his wife, Catherine Shields; that, at the time of the execution and delivery of the deed, appellant was a man of strong and vigorous mind and capable of understanding ordinary and usual business transactions, and was under no undue influence or restraint; that, after the making and delivery of the deed to her, Catherine Shields died intestate, leaving as her heirs-at-law the persons above named; that, at the time of the making of said deed, appellant occupied as a homestead said lot 1 and the strip of land connected therewith; that the lot, and the strip of land, occupied as a homestead, did not exceed in value $1000.00; that Catherine Shields did not join in the deed, and that no title passed thereby to her to the tracts of land occupied as a homestead, but that, by said deed, title passed to her to the eighty acres of land described therein, subject to a life estate therein in the appellant; and the court in said decree ordered, adjudged and decreed, that said deed should be and was thereby declared null and void, in so far as it purported to vest title in Catherine Shields and her heirs to the homestead property, but that title passed from appellant to her to the eighty acres of land subject to said life estate in appellant, and that the title to said eighty acres was vested in appellant and the defendants below as heirs of Catherine Shields, deceased, subject to the life estate therein of the appellant, James Shields. The decree ordered that James Shields should pay one-half of the costs, and that the defendants should pay the other half thereof.

D. D. DONAHUE, for appellant:

Where a deed is found in the possession of a person who is not named as grantee therein there is no presumption of delivery of the deed. *Andrews* v. *Dyer*, 78 Me. 430.

Even if the grantor placed the deed in the possession of a person who is not named as grantee therein there is no presumption of a delivery of the deed. Tiedeman on Real Prop. sec. 814.

Where a deed is found in the hands of a person who is not named as grantee therein, even though it was intended to be made to such person as grantee, there is no presumption of a delivery of the deed; and further, where a deed is found in the possession of a person who is not named as grantee and was not intended to be the grantee there is no presumption of a delivery of the deed, and the identity of the grantee in the first instance must be proven, and what was said and done by the grantor must be. proven in the second instance to show a delivery. *Andrews* v. *Dyer*, 78 Me. 430; *McElroy* v. *Hiner*, 133 Ill. 170; Tiedeman on Real Prop. sec. 814.

Even where the evidence of a party shows that the grantee at one time had possession of a deed, that fact, standing alone, will not raise the presumption of a delivery of the deed. In a contest as to the delivery of a deed the burden of proof is on the party who claims under a deed, to show a delivery. *Oliver* v. *Oliver*, 149 Ill. 542.

Where a deed is made for the purpose of providing for the grantee, and no beneficial use was given to the grantee during the life of the grantor, and the grantee dies during the lifetime of the grantor, and the evidence shows that it was never within the view of the grantor that the wife's relatives should derive a benefit from the gift, the burden of proof is on the wife's relatives to show that the grantor intended to make the gift absolute and irrevocable, as the omission of a power of revocation in such a case is *prima facie* evidence of a mistake. *Aylsworth* v. *Whitcomb*, 12 R. I. 298; *Ex parte Angell*, 13 id. 630; Note

to *Garnsey* v. *Mundy,* 13 Am. L. Reg. (N. S.) 345; Bispham's
Eq. 107, and note; *Menot* v. *Tilton,* 64 N. H. 618; *Ewing* v.
*Wilson,* 132 Ind. 223; *Ricks' Appeal,* 105 Pa. 528; *Russell's
Appeal,* 75 id. 269.

The only decree that could be rendered against com-
plainant as to the eighty-acres of land was one dismiss-
ing the bill; but the court granted appellees affirmative
relief on their answer, so the decree was invalid. *White*
v. *White,* 103 Ill. 438; *Mason* v. *McGirr,* 28 id. 322.

JOHN T. LILLARD, for appellees:

When a deed duly executed is found in the hands
of a grantee there is a strong implication that it has
been delivered, and only clear and convincing evidence
can overcome the presumption, otherwise titles could be
easily defeated and no one could be regarded as being
secure in the ownership of land. *Tunison* v. *Chamblin,* 88
Ill. 387; *Griffin* v. *Griffin,* 125 id. 430; *McCann* v. *Atherton,*
106 id. 31; *Reed* v. *Douthit,* 62 id. 348; *Walton* v. *Burton,* 107
id. 54.

The presumption of delivery of a deed is stronger in
case of voluntary settlement than in case of an ordinary
bargain and sale. *Douglas* v. *West,* 140 Ill. 455; *Latimer* v.
*Latimer,* 174 id. 418; *Winterbottom* v. *Pattison,* 152 id. 334.

Since the abolishment of livery of seizin in Illinois
the statute makes a deed valid even when it is not to be
recorded and not to take effect until after the grantor's
death, and unsupported by an intermediate estate. *Lati-
mer* v. *Latimer,* 174 Ill. 418.

The decree is not appellee's decree, but the court's
decree on appellant's bill and the facts adduced. "Where
a bill in chancery contains a general prayer for relief, it
must be regarded as sufficient to support any decree war-
ranted by the facts alleged in the bill." *Gibbs* v. *Davis,*
168 Ill. 211; *Walker* v. *Converse,* 148 id. 622; *Gunnell* v. *Cock-
erill,* 79 id. 84; *Stanley* v. *Valentine,* 79 id. 544; *Davidson* v.
*Burke,* 143 id. 140.

While no affirmative relief can be granted on answer, yet the court may require the complainant to do equity as a condition to relief, without a cross-bill. *King* v. *Cooper*, 134 Ill. 185.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

*First*—The original and amended bills in this case charge that the deed, executed by the appellant to his deceased wife, Catherine Shields, on December 22, 1893, was never delivered to her; and this charge in the bill is denied by the adult defendants in their answer. The first question, therefore, in the case is, whether or not there was a delivery of the deed in question.

There is conflict in the testimony between the appellant and his witnesses on one side, and the appellees and their witnesses on the other side; but the facts and circumstances in regard to the execution of the deed on December 22, 1893, as established by the weight of the evidence, are as follows:

On December 22, 1893, appellant and his wife, Catherine Shields, went together to the law office of Lillard & Williams, two practicing lawyers in Bloomington; appellant then and there introduced his wife to Lillard and Williams, and stated that he wanted to deed his farm and his home place in Holder to his wife, reserving a life estate in himself; he also stated, that she was a young woman, and would make him a good wife, and he wanted to reward her, and that he had given his children "all he wanted them to have." R. E. Williams, one of the members of the law firm, then wrote the deed, and appellant signed it. The deed was then read over to the appellant, and acknowledged by him before Williams as a notary public. Appellant stated that the deed, which was read to him, was as he desired to have it. Appellant and Williams then left Mrs. Shields in the office of Lillard & Williams, and went together to the recorder's office, and

there left the deed for record, the recorder handing ap-pellant a receipt for the deed. Appellant and Williams then returned to the office of Lillard & Williams, where Mrs. Shields awaited appellant, and he and she left the office together. On January 8, 1894, appellant called at the recorder's office for the deed, and surrendered the receipt therefor, and took the deed out of the recorder's office.

As to what occurred in reference to the possession of the deed after it was taken out of the recorder's office by appellant on January 8, 1894, there is much conflict in the testimony. Appellant claims, that the deed was in his possession until March, 1898, and the charge is made that it was then taken from appellant's possession in Holder by one of the brothers of Mrs. Shields. We do not think, however, that the contention of the appellant in this regard is sustained by the evidence.

In September, 1894, appellant and his wife went to Kentucky to make a visit to her relatives in that State, and they stayed there about two months. During this visit the deed was produced, and exhibited to and examined by several witnesses. The appellant there stated, in the presence of several witnesses, that he had made a deed of his farm, and house and lot to his wife. Upon one occasion he told his wife to go into the house, and get the deed, and show it to her father. She brought the deed from the house, and the appellant read it. After it was read, she took it and put it in her trunk. The deed was, during that visit, exhibited by the appellant to a witness, who was a lawyer, with a view of satisfying the relatives of Mrs. Shields that the deed was valid. It is shown by the testimony of some four or five witnesses, that the appellant, during that visit, stated that he had already provided for his children by his former wife, and had given what was left, to-wit, the farm and the homestead, to his wife, Catherine. When the appellant and his wife, Catherine, were preparing to return from Ken-

tucky to Illinois after the visit made in September, 1894, she gave the deed to her father, A. G. Bush, and asked him to put it with his papers, and take care of it for her. The evidence tends strongly to show that, during that visit, the deed was in her trunk and in her possession. Upon the trial of this case the deed was produced from the possession of A. G. Bush, who stated that he had it in his possession from the fall of 1894 until he produced it upon the trial of this case.

In the spring of 1898 appellant and his wife had made up their minds to leave Illinois, and go to Kentucky to live. At that time they did move from Illinois to Kentucky, and lived there until the day of her death in December, 1898. Previous to their leaving Illinois for Kentucky in 1898, a search was made at the homestead of the appellant for certain documents and papers, but particularly for a certain note-book which he desired to carry away with him. During this search, appellant stated, in answer to an inquiry as to the whereabouts of the deed which he had made to his wife, that he had no other papers in his possession than those which were found upon that search, and that he had "left his and Kitty's papers with Mr. Bush." This statement on the part of appellant, that he had left his wife's papers in Kentucky with Mr. Bush, confirms the statement of Bush, that he had the deed in his possession from 1894 to the time of the trial, and that it was left with him by his daughter, Mrs. Shields.

We are of the opinion, in view of the facts above stated, that there was a delivery of the deed to Mrs. Shields during her lifetime. It is to be noted, that Mrs. Shields was present with her husband when he executed the deed, and when he left the office of his lawyers in order to take the deed to the recorder's office to be recorded. Mrs. Shields waited for her husband until he returned from the recorder's office where he had recorded the deed, and, therefore, the record of the deed must

have been known to her, and its recording must have been with her assent. "It is true that the act of recording a deed cannot amount to a delivery and acceptance when there does not appear an assent or knowledge by the grantee of the act." (*Herbert* v. *Herbert,* Breese, 354; *Wiggins* v. *Lusk,* 12 Ill. 132; *Himes* v. *Keighblingher,* 14 id. 469). Although the act of recording a deed does not amount to a delivery of the same, yet, where it appears that the grantee in the deed has knowledge of the recording of the deed, and has assented to it, and where the recorded deed is subsequently found in the possession of the grantee, such facts amount to *prima facie* evidence of a delivery. (*Thompson* v. *Dearborn,* 107 Ill. 87; *Weber* v. *Christen,* 121 id. 91). No particular form or ceremony is necessary to constitute the delivery of a deed. The delivery may be made "by acts without words, or by words without acts, or by both." (*Provart* v. *Harris,* 150 Ill. 40). It was said in *Herbert* v. *Herbert, supra,* that the delivery may be "either actual by doing something and saying nothing, or else verbal by saying something and doing nothing, or it may be both; but by one or both of these it must be made, for, otherwise, though it be never so well sealed and written, yet is the deed of no force." The very essence of delivery is the intention of the parties. Anything which clearly manifests the intention of the grantor, and the person to whom it is delivered, that the deed shall presently become operative and effectual, and whereby it appears that the grantor loses all control over it, constitutes a sufficient delivery. (*Gunnell* v. *Cockerill,* 79 Ill. 79; *Latimer* v. *Latimer,* 174 id. 418; *Benneson* v. *Aiken,* 102 id. 284). While it is true that declarations of a grantor, made before or subsequent to the execution of his deed, are not admissible for the purpose of impeaching the deed, yet subsequent declarations of the grantor, which show, that he is satisfied with the deed, have been held to be admissible. (*Burt* v. *Quisenberry,* 132 Ill. 385; *Guild* v. *Hull,* 127 id. 523). Where the conduct of the grantor,

and all the circumstances, are such as to indicate that
the grantor intended to give effect and operation to the
deed, and to relinquish all power and control of it, the
law will give effect to the deed accordingly, and will hold
that there has been a delivery of the same. (*Weber* v.
*Christén, supra*). Where a grantor shows his desire to pre-
serve the deed by placing it upon record, and expresses
his satisfaction with it after it has been executed, it
will be inferred that he intends to make the instrument
effectual by a valid delivery. (*Hill* v. *Hill*, 119 Ill. 242;
*Gunnell* v. *Cockerill, supra*). The testimony shows conclu-
sively in this case, not only that the deed was recorded
with the assent and knowledge of the grantee and, after
it was recorded, was found to be in the possession of the
grantee, but also that, after its execution, the appellant,
the grantor therein, expressed his satisfaction with what
he had done, and announced that it was his intention
thereby to give the property to his wife, subject to his
life estate therein.

This deed was in the nature of a voluntary settlement
made by the grantor for the benefit of his wife. It is well
settled, that the presumption of a delivery of a deed is
stronger in cases of voluntary settlements than in the
case of an ordinary bargain and sale. (*Latimer* v. *Lati-
mer, supra; Douglas* v. *West*, 140 Ill. 455).

*Second*—The decree of the court below was unquestion-
ably correct in declaring the deed to be null and void,
so far as it purported to vest the title to the homestead
property in Mrs. Shields. The value of the premises oc-
cupied as a homestead did not exceed $1000.00, and in-
asmuch as Mrs. Shields did not unite in the conveyance
thereof with her husband, the deed was invalid. Here,
also, the possession of the property remained with the
appellant, the deed expressly reserving to him a life es-
tate in the property. It has been held by this court, that
a conveyance of the homestead, not exceeding $1000.00 in
value, by a householder to his wife, where she does not

join in the conveyance and acknowledge the same, is void and passes no title. (*Kitterlin* v. *Milwaukee Mechanics' Ins. Co.* 134 Ill. 647; *Anderson* v. *Smith,* 159 id. 93; *Despain* v. *Wagner,* 163 id. 598).

*Third—*It is claimed that the decree in this case is erroneous upon the alleged ground, that it grants affirmative relief to the defendants upon their answers, and without the filing of a cross-bill. The contention of the appellant is, that the circuit court should have rendered a decree, dismissing the appellant's bill so far as the eighty acres of land were concerned, and that the court, by failing so to dismiss the bill and by rendering a decree holding the title to the eighty acres to be vested in appellant and appellees as heirs of Catherine Shields, deceased, subject to a life estate therein of the appellant, granted affirmative relief upon a simple answer. We do not think that the decree is erroneous in this regard. The doctrine is fully recognized, that the defendants in a bill should not be granted affirmative relief upon their answer. (*White* v. *White,* 103 Ill. 438; *Mason* v. *McGirr,* 28 id. 322). It is also true that, in a bill to remove a cloud from the title, a re-conveyance from the defendant to the complainant should not be decreed. (*Pratt* v. *Kendig,* 128 Ill. 293; *Rucker* v. *Dooley,* 49 id. 377).

But it is well settled that, where a bill in chancery contains a general prayer for relief, it must be regarded as sufficient to support any decree warranted by the facts alleged in the bill. (*Gunnell* v. *Cockerill, supra; Stanley* v. *Valentine,* 79 Ill. 544; *Davidson* v. *Burke,* 143 id. 139; *Walker* v. *Converse,* 148 id. 622; *Gibbs* v. *Davies,* 168 id. 205). In the case of *Gibbs* v. *Davies, supra,* we said: "The rule is, where a bill contains a prayer for special relief and also a prayer for general relief, the complainant may be denied a decree for the relief specially prayed for, and, under the general prayer, be granted such relief as he may be found entitled to have under the allegations of fact made in the bill, and the proof in support thereof."

In the case at bar, the prayer of the bill is that the deed in question "may be declared null and void as against your complainant, and all persons who may hereafter claim by or through him, as a cloud upon your complainant's title, and that the said deed may be delivered up and canceled; and that your complainant may have such other and further relief, as equity may require, and to your honor may seem meet." The amended bill alleges, that Catherine Shields left surviving her her husband, James Shields, and her father and brothers and sisters, "being the only heirs-at-law of Catherine Shields." It also alleges, that appellant and his wife occupied the lot, and the strip connected therewith, as their homestead at the time of the execution of the deed, and "that he and his wife continued to live thereon, and that his wife did not join in the execution of the said deed, and that it was void and conveyed no title." It is also alleged in the bill, "that no complete legal title was conveyed to the said Catherine Shields;" and "that the said deed is without any legal effect whatever, though the same may not appear on the face of said deed." The bill also prays "that the said deed be set aside as a cloud upon your complainant's title, and your complainant prays the court that the said deed be revoked and declared null and void, and that the same be delivered up and canceled." The bill was also amended by inserting the allegation "that, if the court refuses the relief above asked, this complainant prays that the court construe the said deed, and determine whether any title of estate passed by said deed. Complainant further prays that, if the court refuse the relief above asked, the court set aside the said deed 'as to the homestead,'" etc.

Under the prayer of the bill and the allegations made therein as above referred to, the decree was not too broad. It merely construed the deed, and determined what title passed thereby in accordance with the prayer of the bill. Having found that the deed was void as a

189—35

conveyance of the homestead, it proceeded to determine the title as to the farm of eighty acres. As the court could not, under the facts, grant the special prayer for the cancellation of the deed as a conveyance of the whole of the property, it could only grant the general relief of finding and decreeing the deed void as to the homestead, and of finding and decreeing the deed valid as to the eighty acres. The relief decreed was not upon the answer, but was under the prayer of the bill. The title to the eighty acres was not vested in the appellant and the heirs of his deceased wife by the decree, but it had already been so vested by the deed, and by the law, as applied to the construction of the deed. A court of equity could not, in the performance of its legitimate functions, decree otherwise than it did on the facts of this case.

Accordingly the decree of the circuit court is affirmed.

*Decree affirmed.*