**F. G. JANES, JR., v. ANNA H. JANES and MARION JANES.**

15 So. (2nd) 677              June Term, 1943
November 23, 1943              Division B
Rehearing Denied December 7, 1943

*Leitner & Leitner,* for appellant.

*W. W. Whitehurst,* for appellees.

THOMAS, J.:

The appellant, who was the plaintiff in the chancery court, instituted a suit against his mother, the appellee Anna H. Janes, and his brother, the appellee Marion Janes, seeking a decree cancelling two deeds. In one of them Anna H. Janes was grantee and she and her husband, now deceased, were grantors; in the other she was grantor and the appellee Marion Janes was grantee. It was the theory of the plaintiff that the former instrument was ineffectual as a conveyance

because it was not delivered and that therefore, having received no title under it, Anna H. Janes had none which she could convey in the latter. Inasmuch as the appellee Marion Janes reconveyed the property to the appellee Anna H. Janes about the time the suit was commenced there is no need to dwell upon this transaction, but we will concern ourselves solely with the validity of the deed from Anna H. Janes and her husband to herself.

At the outset it might be well to define the burden which the appellant undertook if he expected to prevail in the suit. Although "delivery of a deed is essential to the passing of the title to the property intended to be conveyed to the grantee," Pratt, et al., v. Carns, et al., 80 Fla. 243, 85 So. 681, 683, there is presumed to have been a delivery where the grantee has possession of the instrument. Wilbur v. Grover, et al., 140 Mich. 187, 103 N.W. 583. While it has been decided that delivery is as indispensable to the validity of a deed between members of a family as between persons unrelated, Culver et al., v. Carroll, 175 Ala. 469, 57 So. 767, Ann. Cax. 1914D, 103, yet it has been recognized that the presumption favoring delivery is stronger in transfers like the one we are considering than in ordinary cases of bargain and sale, Shields v. Bush, et al., 189 Ill. 534, 59 N.E. 962. 82 Am. St. Rep. 474. In the instant case it was the plaintiff's task to establish the failure of delivery, the presumption being against him if it developed that the challenged deed had come into the possession of the grantee. It is our view that the question was determinable only by weighing carefully all of the circumstances surrounding the transaction.

In more than forty years of married life the appellee Anna H. Janes and her husband had been industrious, had accumulated the property in question; and the homestead which is not involved in this controversy. They reared and educated four sons, two besides the appellant and the appellee. At the time of his death, 12 July 1940, they lived in the City of Wauchula. They derived their income from the land described in the deed which was set in citrus grove. In their home there was a strongbox in which they kept papers of any value. Evidently it was accessible to both.

On 17 October 1933 the husband and the wife executed a deed transferring to her the property situated in the country, and the instrument was placed in the strong-box which they both used. Appellant prepared the deed; he signed it as a witness; and its execution by the grantors was acknowledged before him. The significance of his connection with the transaction will become more apparent as the facts are discussed.

Shortly after the death of F. G. Janes, Sr., Anna H. Janes was appointed administratrix of his estate. The appellant, F. G. Janes, Jr., according to his own testimony, prepared the necessary papers for signature by her. The deed executed about eight years before was recalled by Anna H. Janes and removed from the strong-box. Meanwhile she had been advised by friends that she could claim a dower interest in the estate; consequently 8 March 1941 she presented to the county judge her petition for an assignment of dower. Three months later the county judge entered his order declaring that the property did not constitute any portion of the estate of F. G. Janes, Sr., because long prior to his death it had been transferred to Anna H. Janes. Upon these circumstances, that is, the apparent inconsistencies in the positions of Anna H. Janes in representing at the time of her appointment as administratrix that the property was part of the estate, in while later she sought dower, her claim that the property was her own, the peculiar manner in which the deed was executed by her and her husband to her as grantee, and the retention of the instrument in a place equally accessible to him and to her, the appellant relied to establish the invalidity of the transfer.

When, however, we explore the testimony, giving the background and history of this family and showing the activity of the appellant since the deed in question was executed, a conclusion quite consistent with that of the chancellor is immediately reached. Appellant and his brother fared well because of the enterprise of their parents. All attended creditable institutions. One became a chemist, one an engineer, one a successful business man. The eldest, appellant, to whom we will now devote our attention, entered the legal

profession. He served for many years as county judge, and in that capacity became thoroughly schooled in the law governing administration of estates. It was only natural that when his father died his mother should look to him for sound advice. It was he who prepared the administration papers for her to sign. If there was any inconsistency in her representations to the court at the time, because of the existence of the deed executed in 1933, he was more responsible than she because not only was he learned in the law, but he served as witness, acknowledging officer and probably as scribe when that transaction was consummated. When his mother learned from a friend that she was entitled to a dower interest in the estate she approached him for advice and was told that he would not assist her. Not until then did she seek counsel from an attorney in another city. During this consultation the validity of the deed, which had not then been recorded, was discussed, and subsequently she was told by this attorney that the deed was valid and that she should record it. She followed the advice and the order of the county judge deciding that the property was not properly an asset of the estate resulted.

We discover no error in the chancellor's ruling that the deed was actually delivered; nor can we find any flaw in his reasoning that there was proper occasion for F. G. Janes, Sr., to convey the citrus grove direct to his wife. She had through the years contributed her full share toward the property that they had accumulated. Their sons, through the joint efforts of their parents, had been well educated and had entered on successful business or professional careers. No longer was it necessary for the parents, then more than sixty years of age, to be apprehensive about the future of their children. At their advanced ages it was only natural that the husband should be primarily concerned with the welfare of his life-long companion should he predecease her. Doubtless that was his motive, and the deed was executed conveying to her title to the income-bearing property.

We see nothing peculiar in the manner in which the deed was retained in their common lock box after its execution. Certainly there is nothing strange in a man and his wife keep-

ing valuable papers in the same receptacle. Not only do we consider the method normal, but when we recall appellant's connection with the transaction we are convinced that he should not be heard to question it. It has been argued that the mother had forgotten that the deed was ever signed; but had not he also? His explanation of his failure to remember is remarkable; in his testimony he said that "it was known to me and my dad that these deeds were not intended to convey the property and title,"; he added: "At the time I attached my signature to the deed I knew it was an idle gesture, and so did he."

When the testimony of the appellant is weighed in the light of the rules we stated at the beginning and when it is compared with the evidence offered on behalf of the appellees it is difficult to see how the chancellor could have justly arrived at any conclusion other than the one that there had been a failure on the part of the appellant to prove the allegations of his bill.

Affirmed.

BUFORD, C. J., BROWN and SEBRING, JJ., concur.