**UNITED STATES of America, Plaintiff,**

v.

**VIOMAR CO., et al., Defendants.**

**No. 82–455–Civ-Hastings.**

United States District Court,
S.D. Florida.

March 21, 1985.

David H. Lichter, Asst. U.S. Atty., for plaintiff.

James F. Gilbride, Miami, Fla., for defendant Wiesenberg.

Carl A. Spatz, Miami, Fla., for defendant Towerbank Overseas, Inc.

Guillermo Sostchin, Miami, Fla., for defendants Pavilion Auto Leasing & Rentals, Inc., Reina Gateno de Abadi & Moises Abadi.

Burton Engels, Miami, Fla., for defendant Santeiro.

### ORDER DENYING MOTION TO RELEASE PROPERTY FROM TEMPORARY RESTRAINING ORDER

HASTINGS, District Judge.

This cause is before the Court on movant Malka Wiesenberg's Motion to Release Property From Temporary Restraining Order. The Court held an evidentiary hearing on this motion on March 11, 1985, and is of the opinion that the motion should be denied, for the reasons set forth below.

*Factual Background*

Movant, Malka Wiesenberg, is the daughter of Jose and Margarita Bejman. The Bejmans are federal fugitives from an indictment in the Southern District of Flor-

ida, Case No. 82–34–Cr–SMA, in which, along with several other defendants, they are charged with conspiracy to defraud the United States by failing to report voluminous currency transactions in excess of $10,000 and by failing to file the required Report of International Transportation of Currency of Monetary Instruments for transportation of currency in excess of $5,000 [1] into the United States.

In connection with the transactions described in the indictment, the United States Customs Service and the Department of the Treasury assessed a civil penalty in the amount of $23,069,492.00 against the defendants jointly and severally in accordance with 31 U.S.C. § 1103 [2] and issued a Notice of Civil Penalty against the defendants in that amount. Pursuant to the government's filing of an action to reduce to judgment the civil penalty, this Court issued a Temporary Restraining Order on March 8, 1982, followed by an Order of Preliminary Injunction March 31, 1982.

That injunction in pertinent part restrained and enjoined the defendants from disposing, conveying or taking any other action with respect to all real and personal property within the defendants' possession, custody or control, and/or in which the defendants have a legal or equitable interest. Included in that injunction were two properties described as follows:

Real and personal property located at 20401 N.E. 30th Avenue, Apartment 324 North Miami Beach, Florida owned by Jose and Margarita Bejman, his wife [3] Real and personal property located at Lot 20 in Block 7 of Golden Isles, Section B according to the plat thereof recorded in Plat Book 43, Page 30 of the Public Records of Broward County, Florida,

owned by Jose and Margarita Bejman, his wife [4]

These two properties are owned free and clear by the Bejmans, who purchased them in 1979 and 1980, respectively.[5] Movant filed her motion to have this property released from the Temporary Restraining Order [6] because, according to movant, these two properties were allegedly conveyed to her approximately one (1) year prior to the entry of the Temporary Restraining Order and Order of Preliminary Injunction.

*The Evidence*

In support of her motion, both movant and her husband, Jack Wiesenberg, testified that movant's parents informed them at some unspecified time following their engagement in 1980 that they were going to give them the Golden Isles property and Apt. 324 as a wedding present. Movant and her husband testified that in April, 1981, they contacted an attorney, Mr. Jeffrey Augen, to prepare the necessary papers for transfer of the property. Claimants then introduced into evidence what purported to be a copy of letter from Mr. Augen [7] stating that a warranty deed had been prepared with respect to the Golden Isles property,[8] that the deed was enclosed, and that movant should have the deed signed by her parents and returned to the attorney's office.

Movant testified that she sent "some legal documents" which she believed to be the warranty deeds to Colombia, South America, her parents' residence. Although movant's husband could not testify that he ever saw any warranty deeds after the time the Bejmans originally purchased the Golden Isles property in 1980, movant stated that she saw the documents after they

---

1. 31 U.S.C. § 5316(a)(1) has recently been amended to raise the reporting requirement threshold from $5,000 to $10,000.

2. That section has been amended and is now codified at 31 U.S.C. § 5321.

3. Hereinafter referred to as "Apt. 324".

4. Hereinafter referred to as the "Golden Isles property".

5. Copies of the warranty deeds for both these properties were admitted into evidence.

6. Because this Court entered a preliminary injunction following the issuance of its Temporary Restraining Order, this motion is more properly considered as a motion to release property from the preliminary injunction.

7. This copy is of extremely poor quality, is unsigned, and bears no identifiable letterhead.

8. Apt. 324 was not mentioned in this letter.

were returned by her parents and that she forwarded them to Mr. Augen. Both movant and her husband testified that they never heard from Mr. Augen again,[9] and the warranty deeds which allegedly were to pass title from the Bejmans to movant were never recorded.

Movant also offered into evidence two affidavits executed by her parents which, with respect to Apt. 324 and the Golden Isles property, stated as follows: "That it is our will as the legitimate parents of Malka, to favor her [10] with a wedding gift." These affidavits, which were not requested by the attorney in his letter, state they were executed on May 22, 1981, shortly after the warranty deeds were sent to Colombia. Movant, however, testified that they were not sent back to Florida with the documents; they were in fact not mailed to movant until 1982. Curiously, although the date of the notary's signature on the document accompanying the affidavits— May 22, 1981—matches the date attested to by the Bejmans, the certification of the Consul of the United States [11] is dated April 12, 1982, a year after movant claims she sent the warranty deeds to Colombia and after the issuance of the preliminary injunction in this case.

*The Law*

■ Under Florida law, the essential elements of a valid gift include: (1) donative intent by the donor (2) effective transfer and delivery; and (3) actual and implied acceptance by the donee. *Green v. Green,* 314 So.2d 801, 802 (Fla.Dist.Ct.App.1975). A claim that a gift has been made "must be sustained by clear and satisfactory evidence of every element." *Lowry v. Florida Nat'l Bank,* 42 So.2d 368 (Fla.1949), quoting *Garner v. Bemis,* 81 Fla. 60, 87 So. 426, 428 (Fla.1921). *See also Canova v.*

*Florida Nat'l Bank,* 60 So.2d 627 (Fla. 1952).

■ Considering these three elements in reverse order, this Court finds that movant has met the third element of the *Green* inquiry by demonstrating sufficient acceptance. The government conceded this point at the hearing, and movant's actions in paying the taxes and maintenance on the properties are consistent with acceptance of a gift of the properties.

■ The other two elements, however, are more problematic. It is, of course, black letter law that title to land may not be transferred orally. *See Watrous v. Morrison,* 33 Fla. 261, 14 So. 805 (1894). The Florida Supreme Court has made it clear on numerous occasions that delivery of a warranty deed is not something to be treated lightly: "Delivery is an essential requisite of the execution of a deed conveying valid legal title. Without delivery, nothing passes to the grantee." *McCoy v. Love,* 382 So.2d 647, 649 (Fla.1979). Indeed, the fact that the delivery is to take place between parent and child does not lessen the movant's burden in this case: "Delivery of a deed is essential to the passing of title to the property intended to be conveyed to the grantee ... delivery is a indispensible to the validity of a deed between members of a family as between persons unrelated." *Janes v. Janes,* 15 Fla. 716, 15 So.2d 677 (Fla.1943). Movant has not presented sufficient evidence to demonstrate that the warranty deeds were delivered. The letter from the attorney describes only one parcel of land for which a document was allegedly prepared. Moreover, given the absence of testimony from the donors that the deeds were actually sent and the absence of the deeds themselves, movant has not sufficiently established delivery of the deeds.

---

**9.** Mr. Augen could not be located throughout the pendency of this motion.

**10.** Although movant implied that the property was to be transferred to her, her husband testified that he believed property was to be in both their names. The Bejmans' affidavits are to the contrary.

**11.** Rule 902(3), Fed.R.Evid., requires that for purposes of self-authentication, foreign public documents must be finally certified by a foreign official. In this case, that official was the Consul of the United States.

Alternatively, even if the affidavits from Colombia could in some way be considered sufficient to pass title, the delivery requirement would still not be met under Florida law. A deed must usually indicate a delivery date. In lieu of that, however, when the delivery date *can be proved,* the deed will take effect. *See Douglass v. Tax Equities, Inc.,* 198 So. 5, 8 (Fla.1940). In this case, however, there was no testimony establishing the date on which the affidavits were delivered; movant's testimony was simply that the affidavits were sent to her sometime in 1982.

Because this Court is of the opinion that movant has failed to prove delivery of title as required, the Court need not reach the issue of intent. The Court notes in passing, however, that the evidence presented did not sufficiently establish donative intent.

Moreover, although it is the movant who is attempting to have the property released from the injunction, she offered as evidence affidavits executed by her fugitive parents. In essence, Jose and Margarita Bejman attempted to come into court and testify by way of affidavit on their daughter's behalf. This Court, however, is of the opinion that fugitives should not be able to avail themselves long-distance of federal judicial processes when the only apparent reason they do not appear in proper person before the Court is their fear criminal prosecution in this country. *Cf. United States v. Forty-Five Thousand Nine Hundred Forty Dollars ($45,940) in United States Currency,* 739 F.2d 792, 796–98 (2d Cir.1984) (fugitive not entitled to defend related civil forfeiture proceeding); *Conforte v. Commissioner of Internal Revenue,* 692 F.2d 587, 589–90 (9th Cir. 1982) (fugitive not entitled to prosecute appeal from civil judgment sustaining tax deficiencies and penalties); *Doyle v. United States Department of Justice,* 668 F.2d 1365, 1365–66 (D.C.Cir.1981) (fugitive could not use federal court to adjudicate his claim under Freedom of Information Act), *cert. denied,* 455 U.S. 1002, 102 S.Ct. 1636, 71 L.Ed.2d 870 (1982); *Broadway v. City of Montgomery,* 530 F.2d 657, 659 (5th Cir.1976) (fugitive not entitled to call on resources of appellate court for determination of his case on appeal). Thus, persons who willfully absent themselves from this Court's jurisdiction will not be allowed to take advantage of or invoke this court's processes, powers and sanctions for themselves or on behalf of others for one purpose while avoiding this Court's jurisdiction for another purpose. As a result, this Court gives no effect to the affidavits of the fugitive Bejmans.

Based on the foregoing, this Court is of the opinion that movant's motion should be denied.

Accordingly, its *ORDERED:*

That movant's Motion to Release Property from Temporary Restraining Order is hereby denied.